WILLIAM GUINZBURG *vs.* H. W. DOWNS COMPANY.

Suffolk.    December 11, 12, 1895. — March 10, 1896.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, & LATHROP, JJ.

*Rights of Purchaser of Pledged Stock sold by Auction — Notice of Sale*
*— Waiver — Estoppel.*

The pledgor of a certificate of stock as collateral security for the payment of a note may, by his silence and omission to make any objection to the proposed sale of it by auction in another State when duly notified thereof, waive his right to object to the sale afterwards; and the fact that there was only one bidder does not render the sale invalid.

BILL IN EQUITY, to establish the plaintiff's ownership of stock in the defendant corporation. Trial in the Superior Court, before *Richardson*, J., who reported the case for the determination of this court, in substance as follows.

On or about April 4, 1892, the defendant corporation, which was organized under the laws of Massachusetts with a capital stock of $16,000, and had its usual place of business in Boston, for a valuable consideration, gave the I. B. Kleinert Rubber Company, a corporation established under the laws of New York, and having its usual place of business in New York City, the following promissory note:

"New York, April 4, 1892.   On demand we promise to pay to the order of ourselves, five thousand dollars, at 143 Tremont Street, Boston, Mass., with interest from date at 6% per annum."

The note was signed by the H. W. Downs Company, H. W. Downs, Treasurer, and indorsed by H. W. Downs, Treasurer, and also by H. W. Downs, A. W. Downs, and E. A. Guinzburg, said H. W. Downs, A. W. Downs, and E. A. Guinzburg being then the stockholders and officers of the defendant corporation. The note was signed and delivered in Boston to the vice-president and secretary of the I. B. Kleinert Rubber Company. It was given for two previous notes, aggregating $5,000, which had also been given for still earlier notes of that amount for a loan of $5,000. The original notes were dated New York, though expressly made payable in Boston. At the time and place of the signing and delivery of the note, on April 4, 1892, the de-

fendant corporation, by its treasurer, delivered, as collateral security for the payment thereof, two certificates of stock in the defendant corporation for twenty-seven shares each. These certificates were owned by H. W. Downs, and no question was made that H. W. Downs, Treasurer, had the right to pledge them as security for payment of the note. The blank form for transfer on the back was properly signed. The defendant corporation made payments upon the note from time to time, and on July 18, 1894, the I. B. Kleinert Rubber Company, having already made several demands for payment of the balance and interest, sent by mail the following notice of its intention to sell the stock by auction :

" This notice should be served a reasonable time before the sale. Unless notice is waived, a reasonable time is held to be about four or five days., To H. W. Downs Company : We hereby notify you that you are indebted to us for sum of principal, $489.61; interest accrued on your demand note for $5,000, dated April 4, 1892, $16.32 ; total, $505.93. We further notify you that we hold as security for the payment of the above sum 54 shares of the capital stock of the H. W. Downs Company, of the nominal par value of fifty-four hundred dollars, which, in default of your paying the above indebtedness and redeeming said securities on or before the time hereinafter mentioned, we will sell such securities at public auction at the Real Estate Exchange Salesroom, No. 59 to 65 Liberty Street, in the city of New York, by Richard V. Harnett & Co., as auctioneers, on Tuesday the 24 (twenty-fourth) day of July, 1894, at half past twelve o'clock in the afternoon, for your account, to satisfy our lien thereon and the expenses of the sale, and that we will hold you for the payment of any deficiency arising on sale."

The defendant corporation received this notice on July 20, 1894. At the time and place mentioned in the notice, which was a place where sales of bonds, stocks, and real estate were usually made in New York, and by a regular auctioneer, the certificates of stock were, by the said auctioneer, put up for sale by auction. The auctioneer, by a clerk or agent duly authorized to act for him, asked for a bid in cash " and his expenses " as the auctioneer in respect to the sale. James A. Hudson, Esq., the attorney of the I. B. Kleinert Company, was present at the

sale at the request of and for the plaintiff, and bid for the stock $50 and the auctioneer's expenses. There was no other bid, and the stock was struck off to Hudson as attorney for the plaintiff. He paid $50 and the auctioneer's expenses, amounting to $16, and received for the plaintiff the certificates. None of the stock had ever been sold by auction in New York, and it did not appear that the stock was known in New York, and it was not what is called a "listed" stock. A list of stocks and property sold by the auctioneer on that day was printed, copies of which were in the auction rooms. Hudson testified that he saw the stock advertised in a newspaper in New York, but how advertised, or in what paper, or when, did not appear. In the auction room were other auctioneers selling other property at the same time, twenty-five to thirty people in all being present. After the receipt by the defendant corporation and its officers of the notice on July 20, 1894, they did not communicate with the I. B. Kleinert Company, or take any action in regard to the proposed sale. The judge found that there is no statute in New York regulating the sales of pledges, or of personal property, held as collateral security, but that such sales are regulated and governed by the rules of the common law. After the alleged purchase of the stock by the plaintiff, he made demand upon the defendant corporation to have the shares transferred to him upon the books of the corporation, and to have a new certificate of fifty-four shares of stock issued to him. The demand was refused by the defendant corporation, and the plaintiff's title to the stock was denied by it, and he was excluded from participating in the management of the corporation.

If there was a valid sale of the stock, the relief sought for was to be granted, namely, that the corporation be enjoined from transacting any business at its meetings until a new certificate had been properly issued, and that H. W. Downs be restrained from voting upon the fifty-four shares, and that the officers of the corporation be required to issue a new certificate; if there was not a valid sale of the stock, then the bill was to be dismissed.

*F. M. Davis*, for the defendant.

*C. R. Darling*, for the plaintiff.

ALLEN, J. A pledgee, on default in the payment of his debt, may sell the pledged property at public auction, giving to the

pledgor notice of the time and place of sale. *Washburn* v. *Pond*, 2 Allen, 474. *Union Cattle Co.* v. *International Trust Co.* 149 Mass. 492, 501. But in making such sale he is bound to exercise reasonable skill and diligence in order to get the value of the property. *Newsome* v. *Davis*, 133 Mass. 343. *Clark* v. *Simmons*, 150 Mass. 357. This includes the fixing of a reasonable time and place of sale. *Markham* v. *Jaudon*, 41 N. Y. 235, 243. The facts reported in the present case are somewhat meagre ; for instance, we do not know what public notice was given of the sale, nor whether the price obtained was much, if any, below the value of the shares. We are much inclined to think the place of sale was an unreasonable one. The pledged property consisted of over one third of the whole number of shares in a small Massachusetts corporation, whose whole capital stock was only $16,000. None of the stock had ever been sold at auction in New York, and it was not listed. It did not appear that it was known in New York. The note for which the stock was pledged was made and delivered in Massachusetts, and was payable here, and the pledge was made here. The pledgee was a New York corporation. Under these circumstances, it would have been better to make the sale in Massachusetts.

But it appears that the Downs Company, which was the pledgor, and its officers, whose names were also on the note, all received notice of the proposed sale on July 20, 1894, and the sale was fixed for July 24 ; and the pledgor and its officers, after the receipt of the notice, did not communicate with the pledgee, or take any action in regard to the said notice or the proposed sale. Since all the parties whose names were on the note had notice for this length of time, and omitted to make any protest or objection to the place or time of sale, and took no action whatever in regard to the notice or proposed sale, we think this omission and silence amounted to a waiver of objection on this score, and that they cannot now be heard to complain that the place was unreasonable. See *Metcalf* v. *Williams*, 144 Mass. 452, 455.

The fact that there was only one bidder does not render the sale invalid. *Learned* v. *Geer*, 139 Mass. 31.

On the facts reported, the sale was valid, and the plaintiff is entitled to a decree in his favor.

*Decree for the plaintiff.*