WINCHESTER ROCK AND BRICK COMPANY *vs.* ALBERT B. MURDOUGH.

Suffolk. January 7, 1919. — May 20, 1919.

Present: RUGG, C. J., BRALEY, CROSBY, PIERCE, & CARROLL, JJ.

*Pledge,* Sale on default. *Equity Jurisdiction,* To redeem from sale of personal property by pledgee.

In a suit in equity by a corporation to set aside a sale by the defendant on default of bonds of the plaintiff of the face value of $1,500 pledged to the defendant to secure the payment of a note of the plaintiff for that amount, it appeared that by the terms of the note the defendant was authorized to sell the bonds, "either at public or private sale," or otherwise at his option on the non-payment of the note, and to purchase at any such sale, that the defendant had recovered judg-

ment against the plaintiff in an action on the note, and thereafter had sold the bonds held as collateral at public auction and bought them himself for $15. The plaintiff contended that the sale was not made in good faith. There was evidence on which it could be found that demand had been made for the payment of the note before its maturity and that the defendant then was informed by the plaintiff, that it would be unable to take care of its note by reason of the foreclosure of its property by the trustees under the mortgage securing its bonds, that the bonds held as collateral were retained by the defendant until more than a year after the maturity of the note, that notice in writing was given to the plaintiff of the time and place of the sale of the bonds, which was to be held two months after the notice, that no reply to this notice was received and no effort was made by the plaintiff to protect its interests, that the defendant endeavored before the sale, but without success, to get an offer for or quotation on the bonds, and that he gave notice of the sale to several persons who he thought might be interested, including one of the trustees who were in possession of the plaintiff's property under the foreclosure. There was nothing to show that there was any market value of the bonds. No place of sale was specified in the note and the bonds were sold at the defendant's office in a town near Boston. There was no newspaper advertisement of the sale and only one person other than the defendant and the auctioneer was present thereat. The trial judge found that the sale was made in good faith without intention to take advantage of the plaintiff and in the exercise of reasonable care, and made a decree dismissing the bill. On appeal it was *held* that the findings of the judge were warranted by the evidence and were not plainly wrong.

BILL IN EQUITY, filed in the Superior Court on January 25, 1918, by a corporation organized under the laws of the State of Maine, conducting a rock quarry on land belonging to it in the towns of Winchester and Woburn and having its principal office in Boston, to set aside a sale of bonds of the plaintiff of the face value of $1,500 which had been pledged by it to the defendant as collateral security for a note of the plaintiff payable to the defendant for $1,500, and also to redeem the bonds from such sale, the sale being alleged to have been a mere device and pretence and not to have been carried out in good faith.

The case was heard by *Wait,* J. The evidence, which was reported by a commissioner appointed under Equity Rule 35, is described in the opinion. The judge made the following memorandum and order for a decree:

"The only question upon which the parties are at issue is whether the sale of the security made by the defendant in July of 1916 was so conducted that the plaintiff is entitled to disregard it and hold the defendant to account for a greater sum than the $15 which he then paid.

"The obligor had defaulted; the trustees of the bond issue had

taken possession of the property mortgaged to secure the bonds. The outcome of the obligor's affairs was doubtful, though the trustees and insiders were hopeful. There was no one in position to pay the debt secured.

"There was a sale made at R. L. Day & Co.'s sale on July 19, 1916, at which a par of $10,000 of the bonds brought $5,000, but the defendant did not know of this sale, and might well have distrusted it, had he known of it.

"While one with inside information might well have paid 50 for the bonds and certainly would not have let them go at $15 for $1,500 face value, I am not satisfied the ordinary purchaser at sales of unlisted bonds would have given much more.

"The defendant gave ample and careful notice to the obligor of the time and place of the sale. It was made with due solemnity by a licensed auctioneer. There was no intention on the part of the defendant to take any advantage, and I am not certain that he felt any assurance at the time that he was getting a remarkably good bargain.

"The obligor did nothing to protect the security; though, in fact, at the moment it was without funds to purchase itself.

"There is nothing in the evidence to satisfy me that the defendant intended to do less than justice to the obligor. The sale must stand, unless the fact, that the sale was not held in Boston and by a seller of unlisted stocks and bonds, renders it invalid, and possibly the fact, that only the auctioneer, the defendant and a friend of the defendant, induced by him to be present and bid, were present.

"The cases do not seem to me to require more than good faith and reasonable care. The good faith was certainly in existence; and the evidence fails to convince me that the defendant ought to have expected — after the unsuccessful attempts he had made to get purchasers — that further effort or delay would produce a substantially better result for his debtor.

"Let the bill be dismissed without costs."

Later by order of the judge a final decree was entered ordering that the plaintiff's bill be dismissed without costs. The plaintiff appealed.

The defendant's bill of exceptions, which became immaterial and was waived, referred to at the end of the opinion, related to the

conditional denial by *Wait*, J., of a motion of the defendant that the plaintiff's appeal be dismissed for want of prosecution.

*A. Berenson*, for the plaintiff.

*A. S. Allen*, for the defendant.

RUGG, C. J. This is a suit in equity whereby the plaintiff seeks to set aside the sale of certain bonds formerly held by the defendant as collateral security for a note of the plaintiff and to redeem the bonds. The defendant owned a note of the plaintiff for $1,500, which fell due on or about June 25, 1915. He held as collateral security for the note bonds of the plaintiff of the face value of $1,500, which were secured by a mortgage indenture upon real estate. According to the terms of the note, the defendant was authorized to sell the bonds "either at public or private sale," or otherwise, at his option on the non-payment of the note, and to purchase at any such sale.

On or about April 10, 1915, more than two months before the maturity of the defendant's note, the plaintiff having failed to pay coupons upon its bonds, the trustees under the indenture took possession of the real estate and other property of the plaintiff and conducted its business until January 5, 1918; and on October 6, 1915, the defendant brought suit on his note, and the defendant therein, the plaintiff here, although entering an appearance, made no contest as to its liability and the defendant recovered judgment accordingly. The bonds held as collateral were sold by the defendant at public auction on July 31, 1916, and were bought by him for $15. The plaintiff contends that this sale ought to be set aside because it alleges that it was a mere device and pretence and not conducted in good faith and hence not valid.

The case was heard by a judge of the Superior Court, who found that the sale was made in good faith without intent to take advantage, after careful and ample notice to the plaintiff of the time and place of sale, with due solemnity by a licensed auctioneer, and in the exercise of reasonable care. A decree was entered dismissing the bill.

The familiar rule is that upon an appeal in equity it is the duty of this court to examine the evidence and decide the case according to their judgment, giving due weight to the findings made, but that, since the trial court has had the advantage of seeing the witnesses and weighing their testimony in the light of their

appearance, his finding will not be reversed unless plainly wrong. *Lindsey* v. *Bird,* 193 Mass. 200. A mortgagee, lienor or holder of collateral in making sale of security under a power is bound to exercise good faith and reasonable diligence in an effort to secure a fair price for the property and thus not only to assure his own rights but also to protect the interests of those whose claims are subsidiary or junior to his own. *Bon* v. *Graves,* 216 Mass. 440, 446.

There was evidence tending to show that demand was made for the payment of the note before its maturity and the defendant was advised by the plaintiff that it would be unable to take care of the note by reason of the foreclosure by the trustees under the mortgage. There was some correspondence between the parties at about the time of the action and judgment on the note. The collateral was not sold until more than a year after the maturity of the note. On June 1, 1916, written notice was given to the plaintiff of the time and place of the sale, which was not to take place until July 31 following, substantially two months later. No reply was made to this notice and no effort was made by the plaintiff to protect its interests. The defendant endeavored before the sale, through two brokers engaged partly at least in dealing in such securities, to get an offer or quotation on the bonds, but without success. He gave notice of the sale to several people whom he thought might be interested, including one of the trustees in possession of the plaintiff's property. Whatever may have been the ultimate value of the property secured by the bonds, there is nothing to show that there was any general market for the bonds. The property was in the hands of trustees under a mortgage indenture. The value of the property and its prospects of future success in the nature of things were extremely uncertain. The facts that the bonds were sold at the defendant's office in a town near Boston instead of through stockbrokers, and that there was no newspaper advertisement of the sale, and that there was only one person present other than the defendant and the auctioneer, in connection with all the other circumstances, are not enough to require a finding of want of good faith or of reasonable prudence in conducting the sale. Mere inadequacy of price is not enough to set aside a foreclosure sale. The place of sale was not specified in the agreement, and that it was not in Boston cannot be said of itself to be conclusive of bad faith or want of prudence. The evi-

dence need not be recited in further detail. The findings of the judge are supported by the testimony and are not plainly wrong. The case is governed in principle by *Jennings* v. *Moore,* 189 Mass. 197, *Guinzburg* v. *H. W. Downs Co.* 165 Mass. 467, *Farmers National Bank of Annapolis* v. *Venner,* 192 Mass. 531.

In view of the conclusion here reached, the defendant does not insist upon his exceptions but waives them.

> *Decree affirmed with costs of appeal.*
> *Defendant's exceptions waived.*