W. H. PRIDE AND COMPANY *vs*. W. R. MARSHALL AND COMPANY, INC.

Suffolk. March 25, 1921.— May 28, 1921.

Present: RUGG, C. J., BRALEY, DE COURCY, PIERCE, & CARROLL, JJ.

*Sale,* To enforce lien on goods sold.   *Estoppel,* By conduct.

A manufacturer of jam in the State of Washington on October 7, 1918, sold jam to a dealer in Boston and by delivery to a carrier passed title to the purchaser and, by causing a sight draft upon the purchaser for the agreed price with an indorsed bill of lading attached to be presented to the purchaser through the customary channels, retained a lien on the goods for the price. After repeated delays caused by requests of the purchaser, the seller on July 8, 1919, brought an action for the unpaid purchase price and on August 14 advertised the goods for resale in Boston, sending a notice and copy of the advertisement to the purchaser, to which the purchaser's attorney replied, stating that they neither objected nor consented to the proceedings and, whatever course was pursued, "we on our part shall take advantage of any available defense at the proper time." The sale was held and the manufacturer then amended the action to claim the difference between the net amount realized at the sale and the contract price of the goods and interest. At the trial of the action, the judge refused to order a verdict for the plaintiff for the amount claimed, and left for the jury to determine what loss, if any, the defendant had sustained by an alleged failure of the plaintiff properly to advertise and to conduct the sale; and the jury found for the plaintiff for an amount less than that claimed. Upon exceptions by the plaintiff it was *held*, that

(1) The defendant, by not making any objection when he received notice of the sale, was precluded from contending that the plaintiff did not hold the sale in a proper market, that proper notice and advertisement of the sale was not given, or that the terms of sale stated in the advertisement did not encourage purchasers;

(2) The delay in the sale was caused by the defendant and not by the plaintiff;

(3) A verdict should have been ordered for the plaintiff for the full amount claimed.

CONTRACT, the declaration originally being for $17,000, the purchase price of two thousand cases of raspberry jam which the plaintiff, a manufacturing corporation, had sold to the defendant, retaining its vendor's lien by forwarding bill of lading with draft attached, and $2,000, alleged to be the expenses of their storage and shipment, and a count being added by amendment

on January 14, 1920, claiming $8,117.07 and interest as a balance alleged to be due to the plaintiff after the resale of the jam for the defendant's account described in the opinion.    Writ dated July 8, 1919.

In the Superior Court the action was tried before *Bishop,* J. Material evidence is described in the opinion.    At the close of the evidence, the plaintiff moved that a verdict be ordered for it in the sum of $9,598.50.    The motion was denied and the action was submitted to the jury upon instructions described in the opinion.    The jury found for the plaintiff in the sum of $4,444.93; and the plaintiff alleged exceptions.

Material portions of the sales act, St. 1908, c. 237, were as follows:

" Section 19. Unless a different intention appears, the following are rules for ascertaining the intention of the parties as to the time at which the property in the goods is to pass to the buyer: . . .

"Rule 4. (1) Where there is a contract to sell unascertained or future goods by description, and goods of that description and in a deliverable state are unconditionally appropriated to the contract, either by the seller with the assent of the buyer, or by the buyer with the assent of the seller, the property in the goods thereupon passes to the buyer.    Such assent may be expressed or implied, and may be given either before or after the appropriation is made.

" (2) Where, in pursuance of a contract to sell, the seller delivers the goods to the buyer, or to a carrier or other bailee, whether named by the buyer or not, for the purpose of transmission to or holding for the buyer, he is presumed to have unconditionally appropriated the goods to the contract, except in the cases provided for in the next rule and in section twenty.    This presumption is applicable, although by the terms of the contract, the buyer is to pay the price before receiving delivery of the goods, and the goods are marked with the words ' collect on delivery ' or their equivalents."

" Section 20. (2) Where goods are shipped, and by the bill of lading the goods are deliverable to the seller or his agent, or to the order of the seller or of his agent, the seller thereby reserves the property in the goods.    But if, except for the form of the bill of lading, the property would have passed to the buyer on ship-

ment of the goods, the seller's property in the goods shall be deemed to be only for the purpose of securing performance by the buyer of his obligations under the contract."

" Section 52. (1) The seller of goods is deemed to be an unpaid seller within the meaning of this act: —

" (a) When the whole of the price has not been paid or tendered. . . .

" Section 53. (1) Subject to the provisions of this act, notwithstanding that the property in the goods may have passed to the buyer, the unpaid seller of goods, as such, has: —

" (a) A lien on the goods or right to retain them for the price while he is in possession of them. . . .

" (c) A right of resale as limited by this act. . . ."

" Section 60. (1) Where the goods are of a perishable nature, or where the seller expressly reserves the right of resale in case the buyer should make default, or where the buyer has been in default in the payment of the price an unreasonable time, an unpaid seller having a right of lien or having stopped the goods in transit may resell the goods. He shall not thereafter be liable to the original buyer upon the contract to sell or upon the sale, or for any profit made by such resale, but may recover from the buyer damages for any loss occasioned by the breach of the contract or the sale.

" (2) Where a resale is made, as authorized by this section, the buyer acquires a good title as against the original buyer.

" (3) It is not essential to the validity of a resale that notice of an intention to resell the goods be given by the seller to the original buyer. But where the right to resell is not based on the perishable nature of the goods or upon an express provision of the contract or of the sale, the giving or failure to give such notice shall be relevant in any issue involving the question whether the buyer had been in default an unreasonable time before the resale was made.

" (4) It is not essential to the validity of a resale that notice of the time and place thereof should be given by the seller to the original buyer.

" (5) The seller is bound to exercise reasonable care and judgment in making a resale, and subject to this requirement may make a resale either by public or private sale."

*R. W. Hale,* for the plaintiff.

*C. S. Tilden,* for the defendant.

CARROLL, J.   On October 7, 1918, the plaintiff sold to the defendant two thousand cases of raspberry jam packed in tins, f. o. b. Bellingham, Washington.   The merchandise was shipped on October 19, 1918, and an indorsed bill of lading with ten days' draft for $16,575 was sent forward and duly presented on October 30, 1918.   The jam arrived in Boston on December 14.   The defendant did not accept it nor pay the draft.   In January following, after the defendant had failed to sell the goods, it placed them in storage.   On July 8, 1919, the plaintiff brought suit for the price of the jam together with the expenses of storage and shipment.   The plaintiff on August 14 advertised the goods for resale at twelve o'clock noon, August 19, 1919, at the office of its attorney; and on the same day sent to the defendant a copy of the page of the Boston Transcript of August 14 enclosed in a letter calling attention to the column in which the advertisement appeared, and stating that the sale was to be conducted for the defendant's account and the plaintiff would look to the defendant to pay the difference between the price at which the jam was sold and the contract price, with interest and expenses.   On August 15 the defendant's attorney acknowledged the receipt of the copy of the notice of sale, and in their letter stated that they neither objected nor consented to the plaintiff's proceedings, and, whatever course was pursued, " we on our part shall take advantage of any available defense at the proper time."   The goods were sold as advertised to the highest of three bidders for $10,200, and the plaintiff claimed the difference between this amount and the contract price, with interest and expenses, $9,598.50.

It was undisputed that in New England there was little demand for jam packed in tins, the demand being for jam packed in glass. In the middle west there was a greater demand for jam in tins than in New England.

At the close of the evidence the plaintiff moved for a directed verdict for $9,598.50.   The case was sent to the jury under instructions that if they adopted the plaintiff's theory that the resale of the goods was held at a proper time and place and manner they should find for this amount.   If, on the other hand, the theory was adopted that the plaintiff did not conduct the resale as early

as it should have done, nor in a place or manner calculated to acquire the best price obtainable, they were to take from the plaintiff's claim that sum in which they found the defendant was injured. They found for the plaintiff in the sum of $4,444.93, and the case was reported.

It was not questioned that the title to the goods passed to the defendant when delivered to the carrier; and that the unpaid sellers retained their lien for the price, and had the right of resale.

If the plaintiff conducted the sale under its lien with reasonable care and judgment, we see no reason why it is not entitled to the full amount of its claim. The defendant, however, contends that the sale was not properly held, for the reason that the jam was sold in Boston when there was a better market in the middle west, that the sale was not sufficiently advertised, and did not take place within a reasonable time after the arrival of the goods in Boston.

The defendant had ample notice of the time and place of the sale. From its experience in the trade it must have known the condition of the market. It did not object to selling the goods in Boston and made no suggestion indicating that a more profitable market could be found elsewhere. It had full opportunity to protect itself, and it cannot now be heard to complain that by selling the goods in Boston the plaintiff failed to use reasonable judgment and care in the conduct of the sale. *Guinzburg* v. *H.W. Downs Co.* 165 Mass. 467. *Winchester Rock & Brick Co.* v. *Murdough,* 233 Mass. 50, 54.

Even if it were essential that notice should be given by the plaintiff to the defendant of the time and place of sale, it cannot complain that the sale was not fully advertised, or, by demanding that a certified check should accompany all bids, that sufficient effort was not made to secure customers or that the sale was unfairly made. As we have said, the defendant was notified, and instead of suggesting that the request for a certified check would prevent bidders from attending the sale or that the advertisement was not adequate and that further publicity should be given, it neither consented nor objected to the course pursued by the plaintiff and claimed the right to take advantage of any available defence. It had already broken the contract by failing to pay the draft and accept the goods, and it was for its interest to see that an advantageous sale was made. It could not stand

by, knowing that the sale was not properly advertised, with full opportunity to assist, and then take advantage of what it now claims was an insufficient notice or advertisement. *Guinzburg* v. *H. W. Downs Co. supra. Winchester Rock & Brick Co.* v. *Murdough, supra.*

The jam arrived in Boston on December 14, 1918, and was resold on August 19, 1919. The defendant expected to sell it to the depot quartermaster of the United States Army, and in March, 1919, urged the plaintiff to let the matter rest, as it still had hopes of so disposing of it; and as late as July, 1919, assured the plaintiff it was " working to clean up that block here now," and hoped " any day to be in a position to lift the draft that is here." The merchandise was not of such a nature, as to require unusual expense in keeping it, see *Putnam* v. *Glidden,* 159 Mass. 47, and even if the defendant could show that a loss was suffered by the delay in making the resale, for this delay it was itself responsible and it is not to be attributed to the plaintiff. The sale was fully executed, and the defendant had title to the property. The correspondence shows that the defendant was asking for further time in which to dispose of the goods and requesting the forbearance of the seller. As none of the material facts were in dispute it should have been ruled that as matter of law the resale, under all the circumstances, was held within a reasonable time. See *Loring* v. *Boston,* 7 Met. 409, 413.

We find nothing in the evidence to show that the sale was not fairly conducted or that the plaintiffs did not use reasonable care and judgment. The plaintiff's motion for a directed verdict should have been allowed. Judgment is to be entered for the plaintiff in the sum of $9,598.50.

*So ordered.*