John H. Giles Dyeing Machine Company, Respondent, *v.* Klauder-Weldon Dyeing Machine Company et al., Defendants, and Holland S. Duell, as Executors of Charles H. Duell, Deceased, et al., Appellants.

Stock corporations — transfer by a New York corporation of all of its assets to another corporation of the same name in another state — when such transfer made upon sufficient notice to creditors of the New York corporation and with their acquiescence — when creditor cannot maintain action against directors of New York corporation under the statute (General Corporation Law [Cons. Laws, ch. 23], § 90) to compel them to pay value of any property they have acquired to themselves, transferred to others, lost or wasted through neglect of duty.

1. The duty of directors of a corporation to creditors upon a liquidation of the assets is that of trustee to beneficiary. Where the cestui que trust has assented to or concurred in the breach of trust, or has subsequently acquiesced in it, he cannot afterwards proceed against those who would otherwise be liable therefor. It is not even required that the approval be express. One who stands by and induces the belief that he assents will not thereafter be heard to complain of the act that another might have abstained from if dissent had been announced.

2. Plaintiff, a New York corporation, sold and delivered all of its assets to defendant, another New York corporation, payment to be made by promissory notes. Defendant thereafter, upon notice to plaintiff and with the consent of all its outstanding stock, transferred all of its assets to a corporation of the same name in another state in which its manufacturing plant was situated. The latter corporation was to assume the payment of the debts and was to issue its own shares in exchange for the shares of the defendant at an agreed rate of exchange. The plaintiff had full knowledge of the transaction and acquiesced by signing waivers of meetings and joining in acts intended to effectuate the transfer. After the re-organization it recognized the foreign corporation as its principal, made out its bills on that basis and upon that basis accepted payment. Later the business of the company collapsed and it was unable to pay its notes to the plaintiff. Plaintiff began this action against defendant and its directors to compel them to pay " the value of any property which they have acquired to themselves, or

transferred to others, or lost or wasted" through neglect of duty (General Corporation Law [Cons. Laws, ch. 23], § 90) upon the theory that the directors of defendant, the New York corporation, were guilty of negligence and waste in conveying all the assets without other security for the creditors than the exaction from the grantee of a covenant to assume the debts and pay them. The plaintiff cannot maintain the action. There was approval of the transfer by plaintiff both before the event and after. It had full knowledge of all of the facts and circumstances of the transfer and not only did not dissent but accepted the new relationship and actively participated to establish and maintain it. Not fraud, but irregularity, even though the plaintiff's approval had been lacking, would be the height of their offending. The irregularity, if any, disappears when there is proof of consent and condonation. (*Darcy* v. *Brooklyn & N. Y. Ferry Co.*, 196 N. Y. 99, distinguished.)

*Giles Dyeing Machine Co.* v. *Klauder-Weldon Dyeing Machine Co.*, 198 App. Div. 654, reversed.

(Argued May 12, 1922; decided May 31, 1922.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the third judicial department, entered December 5, 1921, affirming a judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term.

*Holland S. Duell, F. P. Warfield* and *D. A. Woodcock* for executors of Charles H. Duell, deceased, appellants. Plaintiff is estopped from asserting that the transfer of assets and liabilities from defendant company to the Pennsylvania company was unlawful, by its failure to object after notice and before the transfer; by its active assistance in the proceedings by which the transfer was effected; by its acceptance of benefits and enforcement against the Pennsylvania company of rights based on the novation which resulted from the transfer, and by its election to pursue its remedies against the Pennsylvania company. (*Thompson* v. *Simpson*, 128 N. Y. 270; *Michelin Tire Co.* v. *Robbins*, 173 App. Div. 995; *Lane & Company* v. *United Oilcloth Co.*, 103 App. Div. 378; *De Witt* v. *Monjo*, 48 App. Div. 533; *Le Marchant* v.

*Moore,* 150 N. Y. 209; *Consalus* v. *McConihe,* 119 N. Y. 652; *Davenport* v. *Walker,* 110 N. Y. Supp. 411; *Pollitz* v. *Wabash R. R. Co.,* 207 N. Y. 113.)

*Warren C. Van Slyke* and *Aaron C. Thayer* for E. George Lavino et al., appellants. The plaintiff had ample notice and knowledge of the proposed transfer of the assets of the New York corporation to the Pennsylvania corporation, consented to such transfer and elected to hold the Pennsylvania corporation as debtor in the place and stead of the New York corporation. (*Darcy* v. *B. & N. Y. Ferry Co.,* 196 N. Y. 99; *Pollitz* v. *Wabash R. R. Co.,* 207 N. Y. 113; *Michelin Tire Co.* v. *Robbins,* 173 App. Div. 955; *Lane & Company* v *United Oilcloth Co.,* 103 App. Div. 378; *De Witt* v. *Monjo,* 46 App. Div. 533; *Le Marchant* v. *Moore,* 150 N. Y. 209; *Consalus* v. *McConihe,* 119 N. Y. 652; *Davenport* v. *Walker,* 116 N. Y. Supp. 411.)

*Christopher J. Heffernan* for respondent. The contention of the defendants that the plaintiff elected to pursue the Pennsylvania corporation and that consequently this action cannot be maintained, is without force. (*Schoeneman* v. *Chamberlain,* 55 App. Div. 351.)

CARDOZO, J. This is an action against directors to compel them to pay " the value of any property, which they have acquired to themselves, or transferred to others, or lost, or wasted," through neglect of duty (General Corporation Law, sec. 90; Consol. Laws, chap. 23.)

On August 27, 1918, the plaintiff, John H. Giles Dyeing Machine Company, sold and delivered all its assets to the defendant Klauder-Weldon Dyeing Machine Company, a New York corporation. Payment was to be made by a series of promissory notes, of which the first was to mature on January 3, 1919, and the last on January 1, 1920. Provision was made that the plaintiff, the seller, should act thereafter as selling agent of the

buyer. There was also in the same instrument an agreement between the president of the seller and an officer of the buyer for the sale of shares of stock.

The defendant corporation had its plant in Pennsylvania, and those in charge of its affairs believed that convenience would be promoted if a Pennsylvania corporation had the title and control. A corporation bearing the same name, and subject to the same control, but organized under the Pennsylvania law, was already in existence. It was selected as the agency for the attainment of the end in view. A meeting of the stockholders of the New York corporation was held on October 26, 1918. It was then resolved, with the consent of all outstanding shares, to abandon the one form of organization and to continue business under the other. The New York corporation was to transfer all its assets to the corporation in Pennsylvania. The latter in return was to assume the payment of the debts, and was to issue its own shares in exchange for the shares of the defendant at the rate of one share and a quarter of the new for one of the old. The assets were transferred or delivered in accordance with the plan. The creditors of the Klauder-Weldon Dyeing Machine Company of New York became the creditors of the Klauder-Weldon Dyeing Machine Company of Pennsylvania. The stockholders of the one became the stockholders of the other. Lavino, one of the defendants, was given notes as a substitute for stock, but this was the result of a later arrangement made with the new corporation, after the transfer had been consummated. The old corporation stepped out, and another of the same name came in.

The new corporation was hardly launched before it found itself in troubled waters. The business was to be the sale of things required for the war. The coming of the armistice put a sudden check to the demand. The value of the assets at the time of the transfer was supposed

to be greater than the debts. Nothing in the change of title had made the value less, but ready cash was not available, when business was sharply arrested, to pay the debts as due. The plaintiff's first promissory note for $12,000, due January 3, 1919, was presented and dishonored. The other notes as they matured suffered a like fate. The courts of Pennsylvania, in March, 1919, put the business in the hands of receivers, upon a petition which alleged that the assets would exceed the liabilities if kept together and preserved. In June, 1920, or earlier, the property was restored to the corporation, and the receivers were discharged. The plaintiff in the meantime had begun this action. It goes upon the theory that under our ruling in *Darcy* v. *Brooklyn & N. Y. Ferry Co.* (196 N. Y. 99) the directors of the New York corporation were guilty of negligence and waste in conveying all the assets without other security for the creditors than the exaction from the grantee of a covenant to assume the debts and pay them. Because of this omission the directors have been held personally liable to the plaintiff for the payment of its entire claim, amounting to more than fifty-five thousand dollars at the date of the decree. The ruling of the trial court was approved at the Appellate Division by a divided vote. The defendants are appellants here.

We assume in support of the decision that *Darcy* v. *Brooklyn & N. Y. Ferry Co.* (*supra*) applies to the transaction, and condemns it, if the plaintiff has not effaced the wrong through knowledge and consent. Distinctions worthy of careful scrutiny are urged by the directors. We pass them over as needless, since knowledge and consent were proved. One Giles was the plaintiff's president, and the owner of all its shares, except a few reserved to qualify its officers. He was told in the summer of 1918 that the Pennsylvania corporation was to be revived, and that it would take over all the assets and liabilities of the corporation of New York. He expressed approval of

the plan as wise.   He received notice of the stockholders' meeting of October, 1918 (Stock Corporation Law [Cons. Laws, ch. 59], sec. 16).   The notice stated that the meeting would be held " for the purpose of voting upon a proposition to change from a New York to a Pennsylvania corporation, with the same amount of stock; the assets and liabilities to be transferred from the New York corporation to the Pennsylvania corporation upon issue of their stock for the present $200,000 of stock of this company."   True, the notice was addressed to him as an individual, but his knowledge was the plaintiff's when he represented it thereafter in dealings with its debtor (*Title Guarantee & Trust Co.* v. *Pam,* 232 N. Y. 441, 457).   He admits that he read the notice when received.   Far from protesting, he signed a waiver of notice of any adjourned meetings that might deal with the same subject.   His conduct at that time and before, if it could be thought ambiguous when viewed alone, gains significance and certainty in the light of the events that followed.   When reorganization was voted, he and the corporation for which he acted, reiterated their approval by joining in acts intended to effectuate the transfer.   Some patent rights which the plaintiff had undertaken to assign to the New York corporation were still in the plaintiff's name.   The plaintiff assigned them afterwards, not to the defendant, but to the defendant's assignee.   The contract between the plaintiff and the defendant made the plaintiff a selling agent for the defendant in return for a ten per cent commission.   The plaintiff, after the reorganization, recognized the Pennsylvania corporation as its principal, made out its bills upon that basis, and upon that basis accepted payment.   One Keefer, a subordinate of Giles, had inadvertently omitted to sign a waiver of the October meeting.   As late as December 8, 1918, Giles, signing the letter in the name of the plaintiff corporation, transmitted the waiver to the Pennsylvania corporation with apologies for the delay.

We think one inference and one only can be drawn from these circumstances when viewed in all their cumulative significance. There was approval before the event and after. The plaintiff argues that it knew there was to be a transfer, but that, for all the evidence discloses, it may not have known the terms upon which the transfer was to be made. The terms were stated in the notice which announced the purpose of the meeting. The scheme from its inception had been one of substitution and nothing else. If the plaintiff could ever have been uncertain of its meaning, the doubt must have been dispelled when the notice was received and read. There followed, not dissent, but acceptance of the new relation, and indeed active participation to establish and maintain it. The plaintiff would have it now that all this was done upon the faith of the creation of some fund, unmentioned at the time by any one. One cannot but feel the contention to be a pretense that has been born of the emergency of later needs. The whole transaction told another story. The express disclosure of the project was reinforced by all the apparent implications of its genesis and purpose. The directors were free, at all events, to act upon appearances (*DeBussche* v. *Alt*, L. R. 8 Ch. D. 286, 314). They might shape their conduct in reliance upon those inferences that business men would draw when viewing the transaction as a whole, in the setting of the occasion. Thus acting, they are not to be condemned because appearances may have been contradicted by secret reservations.

The duty of directors to creditors upon a liquidation of the assets is that of trustee to beneficiary. " Where the *cestui que trust* has assented to or concurred in the breach of trust, or has subsequently acquiesced in it, he cannot afterwards proceed against those who would otherwise be liable therefor " (*Vohmann* v. *Michel*, 185 N. Y. 420, 426). The principle is one of common application (*Kent* v. *Quicksilver Mining Co.*, 78 N. Y. 159,

178, 187; *Pollitz* v. *Wabash R. R. Co.*, 207 N. Y. 113, 129; *Beatty* v. *Guggenheim Exploration Co.*, 225 N. Y. 380, 388; *Fletcher* v. *Gollis*, 1905, 2 Ch. 24; *Hall* v. *Otterson*, 52 N. J. Eq. 522, 534; *Pride & Co.* v. *Marshall & Co.*, 239 Mass. 53). It is not even required that the approval be express. One who stands by and induces the belief that he assents will not thereafter be heard to complain of the act that another might have abstained from if dissent had been announced (*DeBussche* v. *Alt*, L. R. 8 Ch. D. 284, 314). The act to which this creditor assented by acquiescence, if not otherwise, must have seemed at the time of acquiescence to be trivial and formal. One might suppose that the substitution would be accepted almost as of course. A change that bulks large in the retrospect because of the litigation that has sprung from it, had no such significance or importance to those who effected or approved it. What was happening seemed very simple. There was to be a change in the sovereignty to which the allegiance of the company was due. Pennsylvania was succeeding to the control which till then had been exercised by New York. Beyond that, everything, with only the slightest variation, was to be as it had been before. There were to be the same assets; the same liabilities; the same managers; even the same name. Sinister or furtive purpose on the part of the directors there was none. None, in any event, is established in this record. Not fraud, but irregularity, even though the plaintiff's approval had been lacking, would be the height of their offending. The irregularity disappears when consent and condonation enter.

The judgment of the Appellate Division and that of the Special Term should be reversed, and a new trial granted, with costs to abide the event.

HISCOCK, Ch. J., HOGAN, POUND, McLAUGHLIN, CRANE and ANDREWS, JJ., concur.

Judgments reversed, etc.