JOHN H. GILES DYEING MACHINE COMPANY, Respondent, *v.* KLAUDER-WELDON DYEING MACHINE COMPANY, Defendant, Impleaded with HOLLAND S. DUELL and Another, Executors, etc., of CHARLES H. DUELL, Deceased, and Others, Appellants.

Third Department, May 6, 1925.

Corporations — action by judgment creditor under General Corporation Law, §§ 90 and 91, to compel directors to pay plaintiff's claim against corporation — action is based on sale of entire property of corporation to Pennsylvania corporation, which agreed to assume obligations of defendant corporation — defense that sale was made under Stock Corporation Law of 1909, § 16, on unanimous consent of stockholders — defendant's principal business was carried on and all its tangible property was located in Pennsylvania — stockholders of defendant corporation accepted stock in Pennsylvania corporation in exchange for their stock — stockholders and directors of Pennsylvania corporation are same as those of New York corporation — sale was valid — directors committed no wrong in voting as stockholders for sale or in carrying out resolution of stockholders authorizing sale — former judgment for plaintiff reversed by Court of Appeals — evidence shows that plaintiff consented to transfer — individual defendants did not receive proceeds and plaintiff was not defrauded.

In an action by a judgment creditor of a New York corporation brought under sections 90 and 91 of the General Corporation Law against the corporation and its directors to recover from the directors the amount of the plaintiff's claim against the corporation, which action is based on an alleged illegal sale of all the property of the corporation to a Pennsylvania corporation, without, as alleged by the plaintiff, providing for the payment of its claim, the action by the New York corporation and the individual defendant, who were the directors thereof, in transferring the property to the Pennsylvania corporation, was not illegal but the sale was valid, for it appears that the sale was authorized by section 16 of the Stock Corporation Law of 1909, in that the principal business of the defendant corporation and all of its tangible property were located in the State of Pennsylvania; that at a meeting of the stockholders, the board of directors was unanimously authorized to make the transfer and did, under that authority, transfer the property to the Pennsylvania corporation; that the Pennsylvania corporation assumed and agreed to pay all obligations of the New York corporation, and the stockholders of the New York corporation agreed to and did receive stock in the Pennsylvania corporation in exchange for their stock in the New York corporation; and that the stockholders of the Pennsylvania corporation and the directors thereof are the same as those of the New York corporation.

A prior judgment in favor of the plaintiff was reversed by the Court of Appeals on the ground that the plaintiff consented to the transfer, and the evidence on the present trial justifies the conclusion that the plaintiff knew about the contemplated transfer and either directly or impliedly consented thereto, and furthermore, the evidence on the question whether or not the plaintiff consented was not substantially changed on the present trial, and, therefore, the judgment in favor of the plaintiff should be reversed.

Furthermore, there was no neglect or breach of duty on the part of the individual defendants. They did not receive the proceeds of the sale nor distribute them to others, nor have they lost or wasted the assets of the defendant corporation or taken any thereof to themselves, and the Pennsylvania corporation is and at all times has been solvent and able to pay plaintiff's claim which it assumed, with the exception of a short period when it was in the hands of a receiver.

APPEAL by the defendants, Holland S. Duell and another, as executors, and others, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Montgomery on the 4th day of December, 1924, upon the decision of the court rendered after a trial at the Montgomery Special Term, with notice of intention to bring up for review upon such appeal an order entered in said clerk's office on the same day, granting an extra allowance to the plaintiff in the sum of $1,000.

*Holland S. Duell* and *Thayer & Van Slyke* [*Aaron C. Thayer, Holland S. Duell* and *Warren C. Van Slyke* of counsel], for the appellants.

*Christopher J. Heffernan,* for the respondent.

VAN KIRK, J.:

This is an action under the General Corporation Law (§§ 90, 91) to compel the individual defendants to pay plaintiff its claim against the defendant corporation to the value of any property of that corporation which they have acquired to themselves, transferred to others, lost or wasted by a violation of their duties as directors. Since the action was begun Charles H. Duell died and his executors have been substituted. A former judgment for plaintiff was reversed (233 N. Y. 470) because the acts complained of were performed with the knowledge and consent of the plaintiff; and the court said, after referring to some of the circumstances: "The directors were free, at all events, to act upon appearances (*De Bussche* v. *Alt,* L. R. 8 Ch. D. 286, 314). They might shape their conduct in reliance upon those inferences that business men would draw when viewing the transaction as a whole, in the setting of the occasion." The trial court has again rendered judgment for plaintiff. This presents the question, Has the evidence been so changed that this judgment may stand?

Before referring to the evidence we should have definitely in mind the misconduct charged against the defendants and what was done. The charge in the complaint is that the defendant Klauder-Weldon Dyeing Machine Company of New York, by order of its board of directors, sold and transferred to the Klauder-Weldon Dyeing Machine Company of Pennsylvania all of its property and franchises and the latter company pretended to

assume the obligations of the defendant company; that the proceeds of that sale constituted a trust fund for the payment of the debts of the defendant company; that the individual defendants, conspiring one with another, transferred the assets of the defendant corporation to the Pennsylvania corporation, received the proceeds of such sale, distributed them among themselves and applied the same to their own benefit, with the design to cheat and defraud this plaintiff; that they disposed of such proceeds without making any provision for the payment of plaintiff's obligations against the company and in violation of their duties as directors; and have thus despoiled the said company of its property. The answers after admissions and denials state as a separate defense that the transfer was made under section 16 of the Stock Corporation Law of the State of New York as it stood in 1918 upon the unanimous vote of all the stockholders. The plaintiff was the sole creditor, and was a judgment creditor, of the New York corporation. The action is not in representative form to recover funds into the treasury, but is an individual action to collect the amount due it and such action could in a proper case be maintained. (*Buckley v. Stansfield,* 155 App. Div. 735; affd., 214 N. Y. 679.)

Now what was done? A meeting of the stockholders of the New York corporation was regularly called for October 26, 1918. The resolution, passed by the vote of all the stock, authorized the transfer of all the assets, located in Pennsylvania, of the New York corporation to the Pennsylvania corporation, which was to assume all the liabilities of the New York corporation; directed the president and treasurer of the New York corporation to execute all instruments necessary to effect this transfer; and provided that each stockholder of the New York corporation surrender his stock for an equal amount of stock of the Pennsylvania corporation. In pursuance of this resolution the property was transferred to the Pennsylvania corporation. The entire transaction was conducted and accomplished under section 16 of the Stock Corporation Law of 1909,* which so far as material is as follows: " A domestic corporation the principal business of which is carried on in, and the principal tangible property of which is located within a State adjoining the State of New York, may with the consent of the holders of ninety-five per centum of its capital stock, sell and convey its property situate without the State of New York, not including its franchises, to a corporation organized under the laws of such adjoining State, and such sale and conveyance shall

---

* Since amd. by Laws of 1920, chap. 396. See Stock Corp. Law of 1923, § 20; Id. § 45, as amd. by Laws of 1924, chap. 441. See, also, Laws of 1923, chap. 787, §§ 3, 5, 6.— [REP.

* * * vest * * * in case of a sale to a foreign corporation the property sold, in the corporation to which they are conveyed for the term of its corporate existence, subject to the provisions and restrictions applicable to the corporation conveying them. Before such sale or conveyance shall be made such consent shall be obtained at a meeting of the stockholders called upon like notice as that required for an annual meeting." As to the origin and purpose of this statute see *Matter of Timmis* (200 N. Y. 177, 180). The defendant corporation was a domestic corporation, its principal business was carried on, and all its tangible property was located in the adjoining State of Pennsylvania. The resolution was passed by more than ninety-five per cent of the capital stock, the sale did not include the franchise, and the property was sold and transferred to a Pennsylvania corporation. There cannot be doubt that the conveyance here made was fully authorized and by such conveyance the title of the property went to the Pennsylvania corporation, not to the individual defendants; that the acts done were not the acts of the individual defendants, officers and directors of the New York corporation, but were by a vote of the stockholders; the conveyance made was authorized by this statute and that vote. In this transaction the directors or officers did no wrong. A stockholder who is also a director votes at a stockholders' meeting as an individual and not in a representative capacity; in so doing he does no wrongful act as director. (*Gamble* v. *Queens County Water Co.,* 123 N. Y. 91, 97). The sale having been authorized as the statute permitted by a vote of the stockholders, in what way could the defendants have interfered? The directors were not required to interfere with the sale or the transfer; their duty did not require them to seek to restrain the acts by application to the courts. The resolution provided that the stockholders, not the directors, should receive the stock in the Pennsylvania corporation. The intent of the transaction was simply to change the sovereign power which controlled the corporation. The stockholders were to be the same; the Pennsylvania corporation owned no property at the time other than that transferred from the New York corporation; it owed no debts and the officers of the New York corporation were made the officers of the Pennsylvania corporation. So that, after the transfer, the conditions for enforcing the payment of debts of the New York corporation were identical with the conditions which existed before the transfer. The New York corporation remained in existence, judgment could be recovered against it in New York as before and the only property on which levy under execution could be made was in the State of Pennsylvania as before. Without attempting

to state rules covering all cases within this statute, we hold that this case is covered by the statute. The property which may be conveyed to the foreign corporation in the adjoining State is the property situated outside New York State; no property situated in the State of New York can be so conveyed. The expression in the statute, " subject to the provisions and restrictions applicable to the corporation conveying," contemplates that the property held by the Pennsylvania corporation shall still be liable for the debts of the New York corporation. The resolution was conditioned that the Pennsylvania corporation should assume these debts, the statute required it and the Pennsylvania corporation did assume them. So that, in what was done, we find no neglect or breach of duty upon the part of the officers or directors of the New York corporation. What they as stockholders did by authority of the statute cannot be charged against them as a wrongdoing as directors or officers. They did not receive the proceeds of the sale; they did not distribute the proceeds among themselves or apply them to their own benefit; they did not despoil the New York corporation of its property, nor did they take any of its property out of the jurisdiction of the New York courts. *Darcy* v. *Brooklyn & N. Y. F. Co.* (196 N. Y. 99) was not within section 16. As a result of the transaction this plaintiff was left in the same position, so far as enforcing payment by processes of the court is concerned, after as before the sale. The Pennsylvania corporation was never insolvent. No judgment has been procured in Pennsylvania by this plaintiff and at all times the Pennsylvania corporation has been able to pay its debts, except for a short period, when it was in the hands of a receiver, to be hereinafter referred to.

We now return to the question whether or not the evidence as to plaintiff's consent has been substantially changed; further facts known to it should be recalled. In 1910 the business, which in 1918 belonged to the defendant corporation, was being done and all of the property was located in the State of New York, but the operating company was incorporated in Pennsylvania. At that time Mr. Giles was a stockholder and the secretary of that corporation. For the best interests of the business a New York corporation was organized (the defendant) and the property of the Pennsylvania corporation transferred to the New York corporation, a transaction entirely similar to the one here complained of. Mr. Giles was one of the incorporators of this New York corporation. In the course of events, it happened that, since 1910, the plant and property of this New York corporation had been removed from New York State to Pennsylvania. In consequence,

**776** Giles Dyeing Machine Co. *v.* Klauder-Weldon D. M. Co.

Third Department, May, 1925. [Vol. 212

for a considerable time before October 26, 1918, the officers of defendant corporation had contemplated again becoming a **Penn**sylvania corporation. Mr. Giles, a stockholder, apparently opposed the change. Under the agreement of August 27, 1918, not only did the New York corporation purchase the plaintiff's property including its patents, out of which transaction arose the indebtedness sought to be collected in this action, but Mr. Giles' stock in the New York corporation was sold to Mr. W. Sackett Duell. It is a fair inference that the parties to this contract understood that this stock was purchased to facilitate the plan before contemplated of transferring from New York to Pennsylvania. It was the purpose, having made this change, to gather in some of the great profits arising in business from the war conditions. On October 12, 1918, W. Sackett Duell, a stockholder, director and officer of the defendant corporation, told Mr. Giles that they intended to transfer the property of the New York corporation to the Pennsylvania corporation and to expand the business; that one reason for the transfer was in order to hold real estate in Pennsylvania; and Mr. Giles said the plans to expand were good. On October 14, 1918, he wrote to Mr. Giles: " As stated, as soon as the K-W Co. becomes a Penna. corporation which will be this week, we shall authorize a bond issue of $150,000.— 6% notes at par." Though Mr. Giles had sold his stock in the New York corporation, some of it still stood in his name, and he executed waivers of notice of the proposed stockholders' meeting and all adjournments thereof. At the former trial Mr. Giles admitted that he had read the notice of the stockholders' meeting, but on this trial he denies this admission, but admits that he signed the waivers. The defendants had the right to assume that he knew what he was waiving. He knew the proposed procedure and knew that ninety-five per cent of the stock must vote in order to make the transfer. The Pennsylvania corporation to whom the transfer was made was the old corporation which in 1910 had transferred its property to the New York corporation. Mr. Giles' real complaint here is as to the provision made for paying to him the indebtedness owed by the New York corporation; he claims for this purpose a separate fund should have been set aside. He says that Mr. Duell assured him that plaintiff's obligations would be amply cared for and, when this assurance was given him, he replied that the plan was entirely satisfactory. There was no statement made how the obligations to him were to be cared for. There was nothing in the assurance given from which Mr. Giles was justified in inferring that a separate fund would be set apart to pay these obligations. It is generally true that a creditor of a corporation cannot be

deprived of his equitable lien upon the assets of the corporation by an agreement between the corporation and the transferee of its property that the latter shall assume all the corporate debts, without the consent of the creditor. (*Darcy* v. *Brooklyn & N. Y. F. Co.*, *supra*, 102.) But here there was statutory authority for the thing done and there was no real change of the debtor; the debtor had simply changed its name and residence. Otherwise all the circumstances of the two corporations were identical. We think the assuming of the indebtedness by the Pennsylvania corporation was a substantial compliance with the assurance given by Mr. Duell. After the transfer Mr. Giles recognized the Pennsylvania corporation as the successor of the New York corporation. Through Mr. Giles plaintiff's property, which was sold to the defendant corporation, was delivered in Pennsylvania. He assigned some of the patents directly to the Pennsylvania corporation. The Pennsylvania corporation was not a party to the agreement of August 27, 1918, but Mr. Giles recognized it as the successor to the New York corporation; he sold goods for the Pennsylvania corporation in accord with the terms of that agreement and collected from it for his services up to the time the receiver was appointed. We can hardly accept his statement that he did not recognize the checks received as those of the Pennsylvania corporation. Knowing of the transaction, he could hardly have expected that the New York corporation had a bank account on which to draw checks, and the checks were signed by officers of the Pennsylvania corporation. It was but natural that after the transfer the Pennsylvania corporation should avail itself of the unused check books of the New York corporation. In March, 1919, the Pennsylvania corporation, though solvent, had not the funds to immediately meet its obligations and a receiver was appointed in Pennsylvania. Its inability to pay is explained by those unusual business conditions which followed the armistice. A claim was filed with the receiver for the same indebtedness sought to be recovered in this action. This was filed by plaintiff's attorney. Mr. Giles repeatedly saw the receiver concerning this claim. Although Mr. Giles now asserts that this attorney had not the right to file that claim, it is undisputed that he did with authority file two small claims against the receiver, which arose out of the agreement of August twenty-seventh. With this evidence in the case, omitting that which is disputed, we cannot escape the conclusion reached by the Court of Appeals that there was knowledge and consent on the part of Mr. Giles and the plaintiff as to all the transactions here complained of, and that the directors were free to act upon the appearances. " Thus acting, they are not to be condemned because

appearances may have been contradicted by secret reservations." (233 N. Y. 476.)

We do not think it is necessary to go into the affairs of the issuing of prior lien notes to Lavino and the Corn Exchange Bank in connection with the affairs of the General Textile Company. All these matters were in connection with procuring funds for the corporation and expanding its business; and all the transactions connected therewith occurred after the transfer to the Pennsylvania corporation. These transactions did not occasion insolvency. At all times, except the short period when the Pennsylvania corporation was in the hands of the receiver to conserve its assets, the defendant company has been able to pay its debts. In no respect has the plaintiff been prejudiced or suffered damage by these transactions. Not only do we find insufficient evidence to show an intent to defraud and deceive the plaintiff, but in fact he had not been defrauded or damaged.

The judgment should be reversed and the complaint dismissed with costs.

All concur.

Judgment reversed on the law and facts and complaint dismissed, with costs. The court disapproves of findings of fact as follows: 28, the last two sentences of 35, 45, 46, 47, 52, 56, 57, 58, 59, 60, 61, 62, 63, 64, 67, 68, 69, 78, 79, 80, 81. The court finds that the transfer of the assets of the New York corporation to the Pennsylvania corporation was made with the knowledge and consent of plaintiff; that there was no neglect or breach of duty on the part of the individual defendants, they did not receive the proceeds of the sale, nor distribute them to others, nor have they lost or wasted the assets of the defendant corporation or taken any thereof to themselves; that the Pennsylvania corporation is and at all times has been solvent, it assumed as consideration for the transfer the debts of the New York corporation to plaintiff, which was the only debt at the time. No conspiracy or fraud against plaintiff is shown. No cause of action is established and the defendants are entitled to judgment dismissing the complaint.