### TABOR v. CRAFT.  (8 Div. 976.)

Supreme Court of Alabama.  March 22, 1928.

**1. Arbitration and award ⬤�age57—Result of ,arbitration of boundary dispute was not binding, where arbitrators did not proceed in pursuance of arbitration agreement.**

Where arbitrators of boundary dispute did not proceed in pursuance of arbitration agreement, but according to their own idea of an equitable division between the parties, the result was not binding upon the parties, because their rights and the duty and authority of arbitrators must be measured by the terms of the submission.

**2. Frauds, statute of ⬤⟶70—Parol modification of arbitration submission of boundary dispute is not binding; being contrary to statute of frauds.**

A modification of arbitration agreement of boundary dispute by parol is not binding as fixing boundary, since, under statute of frauds, a writing is necessary to pass title to land, and hence new agreement must be in writing.

**3. Adverse possession ⬤⟶109—Title acquired by adverse possession cannot be divested by subsequent parol agreement with adjoining owner for survey of boundary line.**

If owner acquired perfect title to land in dispute by virtue of adverse possession, such title could not be divested by a subsequent parol agreement with adjoining proprietor to have boundary line between them surveyed.

**4. Boundaries ⬤⟶54(1)—There being dispute as to true location of bed of river constituting boundary between lands, court should direct surveyor to establish course of river by permanent landmarks from which future surveys might be made (Code 1923, § 6441).**

Where parties to boundary dispute were not in agreement as to true location of bed of river, which constituted boundary between their lands, court should, under Code 1923, § 6441, direct a competent surveyor to establish by permanent landmarks the course of the river from which future surveys might be made, so that true line between parties might be located and established.

Appeal from Circuit Court, Madison County; James E. Horton, Judge.

Bill in equity by W. H. Tabor against R. H. Craft to establish and define a boundary line. From a decree dismissing the bill, complainant appeals. Reversed and remanded.

R. C. Brickell, of Huntsville, for appellant.

The award was not in accordance with the submission. 5 C. J. 124, 126, 148; Tuscaloosa Bridge Co. v. Jemison, 33 Ala. 476; Anderson v. Miller, 108 Ala. 171, 19 So. 302; Brown v. Mize, 119 Ala. 10, 24 So. 453. No oral submission can be considered, as none was pleaded. 21 C. J. 552; Grady v. Robinson, 28 Ala. 289; Salmon v. Wynn, 153 Ala. 538, 45 So. 133, 15 Ann. Cas. 478. Appellant was entitled to relief under the evidence.

Robt. E. Spragins, of Huntsville, for appellee.

The contract made between the parties, followed up by the report of the surveyors thereby appointed and agreed on by the parties, fixes and establishes the boundary line, and the parties are bound thereby.

SAYRE, J. Appellant's bill sought to have the court locate the boundary line between appellant and appellee—the line between the coterminous lands owned by them. Appellee answered by pleading and proving an award by arbitrators. Appellant's reply to the award is that in law and fact it was no award, for the reason that the arbitrators exceeded their jurisdiction by making an arbitrary award contrary to the authority conferred upon them by the arbitration agreement. The circuit court, sitting in equity, adopted appellee's view of the matter in dispute, and dismissed appellant's bill.

Muniments of title on either hand refer to Flint river as the dividing line between the tracts of land belonging to the parties. By the parties and their predecessors in title for many years the river had been considered and treated for all purposes as the true line between the two tracts; the land to the west and north of the river belonging to appellant; that to the east and south belonging to appellee. As indicating the origin and nature of the present controversy, we refer to the following facts shown by the great weight of the evidence: In that part of the river which forms the dividing line between the parties, there is a decided bend. Appellant's land is on the inner side of the bend. Until a time variously stated by the witness as 10 to 15 years before the evidence was taken in this cause, sloughs lay across the bend approaching a common point from north and south. But a bank of earth separated them. About the time mentioned, the intervening bank was washed away, and since then, when the river is high, water flows through the slough, out of the river on the north, and back into the river on the south. Four or five years prior to the time above mentioned (i. e., prior to the taking of evidence in this cause), a survey of appellee's land disclosed a shortage (that is, that appellee had not the acreage called for by his title deeds). After that the present controversy between the parties arose. After that appellee, not denying that Flint river was the boundary line between himself and appellant—for about that no dispute was possible—claimed that the river of the title deed was the slough. Thereafter the parties entered into the arbitration agreement.

By that agreement the arbitrators, civil engineers, were to locate the boundary line by

⬤⟶For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

establishing "the true location of Flint river," and to that end the parties adopted the field notes of the section in which their lands lay and the survey of Flint river as it meanders through that section, "as shown by the photographic copy duly certified and hereto annexed, as the true and only evidence of the true location of Flint river," and agreed "that, when said Flint river is so located by said engineers it shall be and become the true dividing line between the lands of the said Craft lying east of said river and the lands of the said Tabor lying west of said river." The photographic copy of the field notes referred to was a copy of the official field notes on file in the office of the Commissioner of the General Land Office of the United States at Washington, D. C., showing the original survey of section 36, the section in which lie the lands of the parties to this cause. The photographic copy is attached to the record according to the provisions of Supreme Court rule 47 (volume 4, Code 1923, p. 896). A copy of the report of the arbitrators is exhibited with the answer of appellee to the bill in this cause. The report does not locate Flint river as the boundary between the parties to the agreement, the parties to this cause. Its recital is, "This survey was made to locate the boundaries between fractions B and D;" and proceeds as follows: "Beginning at a stake at the center of the east boundary of the southeast quarter of said section 36; thence due west 12.76 chains to a stake on the bank of Flint river; thence up the river as follows" —and then follow thirteen or fourteen courses, with bearings back "to the beginning, and containing 22.34 acres, more or less." And then, the report resumes, "Beginning at a stake at the center of the west boundary of section 36; * * * thence north 89¾ degrees east 77.49 chains to the west bank of Flint river; thence," etc., by twenty odd courses with bearings, "to the one-half section line, and containing, together with the island shown on the map just south of the center of section 36, 45.85 acres, more or less."

It is evident on the face of this report that the arbitrators, engineers, did not locate the true course of that part of Flint river which constituted the boundary line between the lands of the parties to this cause. This the arbitrators, engineers, confess. Their theory of the case is that, finding it impossible to trace the course of the river according to the field notes, they undertook to make an equitable division of the disputed area, viz. the island bounded on one side by the river and on the other by the slough, between the parties (but on what principle of equity they proceeded does not appear), and that the parties were present and agreed to the result. Appellee was present, and no doubt the result pleased him, and so we find that appellant was present during so much of their labor as

led them 1200 feet up on the mountain side, but that he was present or agreed to the result of their effort to run a line of division on equitable principles other than the rule laid down by the articles of submission we do not find.

[1-3] The report setting out the result of the arbitration, disclosing the fact that the arbitrators did not proceed in pursuance of the agreement of arbitration, but according to their own idea of an equitable division between the parties, the result is not binding upon appellant, for the reason that the right of the parties and the duty and authority of the arbitrators must be measured by the terms of the submission. Anderson v. Miller, 108 Ala. 171, 19 So. 302; Brown v. Mize, 119 Ala. 10, 24 So. 453. And, even if there was a subsequent attempted modification of the submission by parol, that submission would not suffice, though taken in connection with the report, to fix the boundary for the reason that since, under the statute of frauds, a writing was necessary to pass the title to the land in dispute, the new submission must have been in writing. Walden v. McKinnon, 157 Ala. 291, 47 So. 874, 22 L. R. A. (N. S.) 716. We are not unmindful of observations made in Shaw v. State, 125 Ala. 80, 28 So. 390, and in Walden v. McKinnon, supra, to the effect that the mere matter of locating the boundary of lands does not involve the title; but in this case, as in Walden v. McKinnon, both parties are claiming title to a disputed area—in this case the island bounded by the river and the slough—and, unless the award operates on the title, it is meaningless. But the arbitration report does not pretend to locate the boundary; it purports to lay down a new boundary determined solely by reference to what the arbitrators may have considered to be equitable principles obtaining in the circumstances, and transfers, or rather attempts to transfer, from appellant to appellee, the title to valuable acres, which, according to the great weight of the evidence, was in appellant, if not by paper title traced back to the government—that, it is conceded, depended upon the true location of Flint river, a matter, however, not of itself in doubt—then by right of adverse possession dating back through many years and numerous successive owners on both sides of the river. We have stated this last conclusion as upon the whole evidence. In truth, the same result would follow upon consideration only of the evidence offered on behalf of appellee. And, if a perfect title to the land in dispute had vested in appellant by virtue of adverse possession, that title could not be divested by a subsequent parol agreement with the adjoining proprietor to have the boundary line between them surveyed. Brown v. Cockerell, 33 Ala. 38, followed in numerous later cases. A line established and laid down in pursuance of such an agreement could only have the effect

of affording a datum post for an adverse possession thereafter to be claimed and held.

[4] Hence our conclusion that the decree was erroneous. It should have determined that the true bed of Flint river east of the island was the boundary between the parties (chapter 265 of the Code), and, since the parties were not in agreement as to the true location of the bed of Flint river between their coterminous lands, the court, proceeding according to section 6441 of the chapter aforenamed, should have directed a competent surveyor to establish by permanent landmarks the course of the river from which future surveys might be made; report thereof to be made to the court and subject to the corrective powers of the court, if need be, so that the true line between the parties might be located and established.

Reversed and remanded.

ANDERSON, C. J., and GARDNER and BOULDIN, JJ., concur.