## COMMISSIONER OF INTERNAL REVENUE v. MARSHALL.

### No. 171.

Circuit Court of Appeals, Second Circuit.

Feb. 3, 1942.

---

Samuel O. Clark, Jr., Asst. Atty. Gen., and J. Louis Monarch and L. W. Post, Sp. Assts. to the Atty. Gen., for petitioner.

Harrison Lillibridge, of New York City, for respondent.

James S. Y. Ivins, of Washington, D. C., Amicus Curiae.

Before SWAN, AUGUSTUS N. HAND, and FRANK, Circuit Judges.

FRANK, Circuit Judge.

This is an appeal, by petition for review filed by the Commissioner of Internal Revenue, from a decision of the Board of Tax Appeals, holding that the value of certain remainders created by trusts executed by the respondent was not subject to gift tax for the year 1937. The facts found by the Board may be summarized as follows:

The taxpayer (respondent) established two irrevocable trusts on June 3, 1937, and transferred $10,000 to each. The income of one was to be paid to Kathleen Bowen for life, and the income of the other was to be paid to Mary Eells for life. The principal of each trust fund was to be distributed to the taxpayer upon the death of the life beneficiary, if taxpayer were then living, but if she were not then living, the principal was to be distributed among her children and their issue per stirpes.

The parties stipulated as follows as to the values of the several interests if computed on an actuarial basis: The value of Kathleen Bowen's life interest at the date of the creation of the trust was $4,753.63. The value of the taxpayer's reversionary interest in the trust for Kathleen Bowen was $2,951.90, and the value of the gift over in the event taxpayer did not survive the life beneficiary was $2,294.47. The value of Mary Eells' life interest at the date of the creation of the trust was $5,542.85. The value of taxpayer's reversionary interest in the trust for Mary Eells was $2,112.60, and the value of the gift over in the event taxpayer did not survive the life beneficiary was $2,344.55.

At the hearing before the Board the parties were in agreement that there was a gift of the value of the life estate in each trust and that the value of the taxpayer's reversionary interest in each trust is excludible in computing the taxable gift. The parties were in disagreement only as to whether the value of the contingent remainders to the grantor's children and their issue was properly includible in determining the taxpayer's taxable gifts for 1937. The Board of Tax Appeals held that the value of such contingent remainders was not so includible.[1] We do not agree with the Board's conclusion.

---

[1] The pertinent provisions of the statute and of the Treasury Regulations are as follows:

Revenue Act of 1932, c. 209, 47 Stat. 169:

"Sec. [§] 501. Imposition of Tax. (a) For the calendar year 1932 and each calendar year thereafter a tax, computed as provided in section 502, shall be imposed upon the transfer during such calendar year by any individual, resident or nonresident, of property by gift. (b) The tax shall apply whether the transfer is in trust or otherwise, whether the gift is direct or indirect, and whether the property is real or personal, tangible or intangible; * * *." 26 U.S.C.A. Int.Rev. Acts, page 580.

"Sec. 506. [§ 1005.] Gifts made in property. If the gift is made in property, the value thereof at the date of the gift shall be considered the amount of the gift." 26 U.S.C.A. Int.Rev.Code, § 1005.

"Sec. 510. [§ 1009.] Lien for tax. The tax imposed by this title [chapter] shall be a lien upon all gifts made during the calendar year, for ten years from the time the gifts are made. If the tax is not paid when due, the donee of any gift shall be personally liable for such tax to the extent of the value of such gift. * * *" 26 U.S.C.A. Int.Rev.Code, § 1009.

Treasury Regulations 79 (1936 Ed.):

"Art. 2. Transfers reached. The statute imposes a tax whether the transfer is in trust or otherwise, whether the gift is direct or indirect, and whether the property is real or personal, tangible or intangible. Thus, for example, a taxable transfer may be effected by the declaration of a trust * * *. Inasmuch as the tax also applies to gifts indirectly made, all transactions whereby property or property rights or interests are donatively passed or conferred upon another, regardless of the means or device em-

As an original proposition, the taxability of the contingent remainders would seem beyond question. No one would dispute—least of all, we assume, the taxpayer or the children—that there was generosity here; the taxpayer lost, and the children gained, property interests of substantial value. Section 501 of the Revenue Act of 1932, 47 Stat. 169, imposes a tax "upon the transfer * * * of property by gift," "whether the transfer is in trust or otherwise, whether the gift is direct or indirect, and whether the property is real or personal, tangible or intangible." If these words are not enough, we are told by the Senate and House Reports on the Act that:

"The terms 'property,' 'transfer,' 'gift,' and 'indirectly' [in § 501] are used in the broadest and most comprehensive sense; the term 'property' reaching every species of right or interest protected by law and having an exchangeable value." Senate Report 665, 72d Cong., 1st sess., p. 39; House Report 708, 72d Cong., 1st sess., p. 27.

How, then, does the taxpayer hope to escape the tax?

■ 1. It is argued, in effect, that the differentiation made in "property law" between "vested" and "contingent" remainders is a sort of sacred cow which, in all circumstances and in particular when applying the gift tax statute, must be respected. The argument runs that once a contingent remainder always a contingent remainder: that if a gift is "contingent," it is not a "completed" gift and is, therefore, not taxable as such. But surely Helvering v. Hallock, 309 U.S. 106, 60 S.Ct. 444, 450, 84 L.Ed. 604, 125 A.L.R. 1368, once and for all destroyed such a word-juggling contention. The Supreme Court there remarked that "the law of contingent and vested remainders is full of casuistries"; said that those "elusive and subtle casuistries" may "have their historic justification but possess no relevance for tax purposes"; noticed that those "niceties of * * * conveyancing" derive "from medieval concepts" relating to ancient forms of land ownership; and flatly announced: "Distinctions which originated under a feudal economy when land dominated social relations are peculiarly irrelevant in the application of tax measures now so largely directed toward intangible wealth." [2] Mr. Randolph Paul, recognized as our leading commentator on federal taxation, has observed [3] that "Coke's ghost haunted the estate tax until it was retired" by the Hallock case. We agree that the language of the Court in that case leaves no doubt that that ghost need trouble us no further anywhere in the field of federal taxes. And that is all to the good: Unscrupulous and unreliable in his life,[4] Coke should not govern us from the grave. We should be grateful that, at least in a limited area, Mansfield's modern and more congenial spirit [5] has finally conquered Coke's and that of his disciple Fearne.[6]

---

ployed, constitute gifts subject to tax * * *.

"Art. 17. *Gifts made in property.* A gift made in property is subject to the tax in the same manner as a gift of cash, and the amount of the gift is the value of the property at the date of the gift.

"Art. 19. *Valuation of property.* * * * If the gift is of a remainder or reversionary interest subject to an outstanding life estate, the value of the gift will be obtained by multiplying the value of the property at the date of the gift by the figure in column 3 of Table A opposite the number of years nearest to the age of the life tenant. In case the remainder or reversion is subject to an estate for a term of years, Table B should be used * * *."

[2] The trust assets in the case at bar consist of corporate bonds and stocks.

[3] 2 Paul, Federal Estate and Gift Taxation (1942) 1178.

[4] See citations in United States v. Forness, 2 Cir., 1942, 125 F.2d 928, notes 32 and 33; Hume v. Moore-McCormack Lines, 2 Cir., 1941, 121 F.2d 336, 344, notes 24 and 29.

[5] Coke, a chauvinist might say, never wrote a commendatory letter to an American judge! See Mansfield's letter of 1791 in 1 Dallas viii.

[6] See Leach, Cases on Future Interests (1935) 134–138, for an excellent account of Fearne's attack on Mansfield because of the latter's effort, in Perrin v. Blake, 1 W. Bl. 672, to modify the effects of the rule in Shelley's Case; unfortunately, the merits were obscured as Mansfield, because of conflicting opinions given by him when he was at the bar, was "in bad." See 3 Campbell, Lives of the Chief Justices, 333–337; 12 Holdsworth, History of English Law, 374, 483.

2. It is also argued that Congress could not have intended to be so unjust as to impose a tax based upon an estimate of value, taken from the mortality tables, which may turn out to be not in accordance with reality. Thus the Board refers to the fact that, under Section 510, the donee of a gift may be personally liable for a gift tax not otherwise paid "to the extent of the value of such gift"; suppose, then, argues the Board, that the children, under that section, were required to pay a tax on the value of their remainders at the date of the gift, computed actuarially, and that the life tenants die while the donor still lives; in such circumstances, says the Board, 43 B.T.A. 99, "the children would thus have paid a gift tax on something which they never received."

That argument proves too much. It would preclude a tax on any "value" which is not almost certain to correspond with actual enjoyment. But "value" seldom does so correspond. The fallacy in that argument stems largely from lack of recognition of the eely character of the word "value." It is a bewitching word which, for years, has disturbed mental peace and caused numerous useless debates. Perhaps it would be better for the peace of men's minds if the word were abolished.[7] Reams of good paper and gallons of good ink have been wasted by those who have tried to give it a constant and precise meaning. The truth is that it has different meanings in different contexts,[8] even in the restricted field of "tax law."[9] And there, as almost always, "value" involves a conjecture, a guess, a prediction, a prophecy. With reference to the taxation of life estates, the Supreme Court has relied on educated guesses, as of a given date, based on the mortality tables, disregarding the fact that actually, in the particular case before it, the prophecy has turned out to be wrong because the life tenant did not live up to her life expectancy. "Like all values, as the word is used by the law, it depends largely on more or less certain prophecies of the future; and the value is no less real * * * if later the prophecy turns out false than when it comes out true." Ithaca Trust Co. v. United States, 279 U.S. 151, 155, 49 S.Ct. 291, 292, 73 L. Ed. 647. The rationale of that case is controlling here. Treasury Regs. 79, Art. 19 adopts the actuarial method of valuing remainders. That method is not so arbitrary as to be unreasonable and invalid.

It is immaterial that actuarial estimates may not accord with realities. Few estimates of value do, whether used by courts or laymen: For purposes of corporate reorganization, value, generally, is a reasonable capitalization of future earnings as reasonably foreseeable at the date of reorganization; reliance is had upon an educated guess or peering into the future, which, being a human conjecture, may be wrong. No one can foretell what changes in technology will do to the earnings of any business.[10] Anyone who wants to eliminate uncertainties from "value" will have a sad time getting along in this world. All aspects of living are chancy. We cannot, by the use of a symbol, "value," convert the risky into risklessness, Canute restless change out of existence. Businessmen sometimes pay cash for value which exists only in "moonshine or dreamland."[11] That "market value," for instance, in the case of city real estate, is often a mirage, has been strikingly shown by Abrams, Revolution in Land (1939) 198-200, cf. 132-133, 81-89. Accordingly, we reject the argument that, merely because the "value" of the contingent remainders, measured actuarially, may be inaccurate, Congress must be deemed to have intended that such remainders should not be subject to a gift tax.

Much could be said for such a contention, if the donor in this case had reserved the power to alter the trust so that the actual enjoyment or non-enjoyment of the

---

7 Cf. Paul, Studies in Taxation (First Series, 1937) 159, 228–233 and note 217; 2 Paul, Federal Estate and Gift Taxation, supra, 1220–1221.

8 See Bonbright, Valuation of Property (1937) for a brilliant demonstration of the leaky nature of the word.

9 See Paul, supra.

10 It is told that a banker once defined an invention as that which made his investments worthless.

11 Cf. Paul, Studies in Federal Taxation (First Series, 1937) referring to Adams Express Co. v. Ohio State Auditor, 166 U.S. 185, 222, 17 S.Ct. 604, 41 L.Ed. 965.

Valuations "are of the stuff that dreams are made of," Jenkins v. Smith, D.C., 21 F.Supp. 251, 253, quoting Professor Ely.

remainders depended on the donor's decision; in such a case there would be no feasible measure of the "value" of the remainders, for there are no tables or other means for even roughly measuring the whims or fancies of such a donor.[12]

■ 3. Respondent's next argument proceeds on the assumption (which we adopt arguendo) that, under Helvering v. Hallock, 309 U.S. 106, 60 S.Ct. 444, 84 L.Ed. 604, 125 A.L.R. 1368, the remainders here will be included in the donor's gross estate for estate tax purposes.[13] Making that assumption, it is contended that such remainders are exempt from the gift tax, because, it is said, the Sanford case holds that (with a single exception not applicable here[14]) Congress did not intend to impose a gift tax on any interest in property which is subject to the estate tax. We cannot accept that interpretation of the Sanford decision, for it ignores the fact that the court's discussion of the overlapping of the two taxes centered on the factor—significantly not present here— that the donor there reserved the power to change the remaindermen: After adverting to the possibility that a donee of a taxable gift may be personally liable for the tax, the court went on to remark, "It can hardly be supposed that Congress intended to impose personal liability upon the donee of a gift of property, *so incomplete that he might be deprived of it by the donor* the day after he had paid

the tax."[15] But in the case at bar, if the donees are deprived of the remainders, the deprivation will not be by the act of the donor, but solely because the grim reaper mows down the life tenants during the life of the donor. Here the donor, the moment the trust instrument was executed, completely transferred to others "control over the economic benefits of the property"—the kind of transfer which the Supreme Court has said[16] is "the essence" of a taxable gift—except for the possibility that, during her lifetime, the death of the life-tenants (an event which the donor could not bring about other than by murder or manslaughter) might restore it to her. The common-sense man on the street would believe that the donor had made a gift to the children. The Treasury, we think properly, has made regulations which jibe with that understanding.[17]

■ It is true that in the Sanford case the Court said: "The gift tax was supplementary to the estate tax. The two are in pari materia and must be construed together."[18] But the Court, at that very juncture,[19] cited Burnet v. Guggenheim, 288 U.S. 280, 53 S.Ct. 369, 77 L.Ed. 748 which, on the previous page,[20] it had described as holding that a retention of control by the donor "whether for the benefit of the donor or others, renders the gift incomplete until the power is relinquished whether in life or death."[21] The Court's

[12] Estate of Sanford v. Commissioner, 308 U.S. 39, 60 S.Ct. 51, 84 L.Ed. 20, holding remainders subject to such a reserved power not to be taxable as gifts, could perhaps have been based on such reasoning.

[13] That assumption has not yet been verified by the Supreme Court. If it is incorrect, then the argument we are now about to consider in the text lacks foundation.

[14] The exception being a completed gift made in contemplation of death.

[15] 308 U.S. at page 46, 60 S.Ct. at page 57, 84 L.Ed. 20. (Italics added.)

[16] 308 U.S. at pages 42, 43, 60 S.Ct. 51, 84 L.Ed. 20.

[17] Treasury Regs. 79, Art. 3: "Transfers in trust. Where property is transferred in trust without an adequate and full consideration in money or money's worth and without the reservation of the power to revest in the donor title to such property, the transfer is a gift, but, where the donor reserves such power, the transfer does not constitute a gift within

the meaning of the statute * * *."

[18] 308 U.S. at page 44, 60 S.Ct. at page 56, 84 L.Ed. 20.

The court noted (308 U.S. at page 47, 60 S.Ct. 51, 84 L.Ed. 20) that the legislative history also showed that Congress intended the gift tax to supplement the income tax. That fact was stressed in Commissioner v. Prouty, 1 Cir., 1940, 115 F.2d 331, 337, 133 A.L.R. 977 where the court said: "It may be frankly recognized, however, that the interrelation of the income, estate, and gift taxes presents many puzzling problems which deserve the attention of Congress." And see Paul, Federal Estate and Gift Taxation, supra, 1200–1201 (cf. 1175); Warren, Correlation of Gift and Estate Taxes, 55 Harv.L.Rev. (1942) 1, 37–43.

[19] 308 U.S. at page 44, 60 S.Ct. 51, 84 L.Ed. 20.

[20] 308 U.S. at page 43, 60 S.Ct. at page 56, 84 L.Ed. 20.

[21] See Paul, Federal and Gift Taxation, supra, 1131–1132, 1134, 1173 notes 18 and 19.

entire discussion of the overlapping of gift and estate taxes [22] shows that it was confining its attention to cases where there is such a reserved power as is not found in the instant case.[23]

■ In the Sanford case, the Court pointed to the fact that the Act "provides that when a tax has been imposed * *, * upon a gift, the value of which is required by any provision of the statute * * * to be included in the gross estate, the gift tax is to be credited on the estate tax." And it went on expressly to state that "the two taxes are thus not always mutually exclusive. * * *" But, respondent contends, the Court limited that statement to one specific instance by adding, "as in the case of gifts made in contemplation of death which are complete and taxable when made, and are also required to be included in the gross estate for purposes of the death tax." We do not read the Court's language as limited to that one type of case; it was, we think, used as but one illustration. This appears from the following:

(a) A vested remainder after a life estate is subject to the estate tax. Helvering v. Bullard, 303 U.S. 297, 58 S.Ct. 565, 82 L.Ed. 852. But no one would venture to assert—respondent does not nor did the Board—that the Sanford case holds that Congress, in order to avoid a double tax, intended to exempt such a vested remainder from the gift tax.[24] It follows, then, that the Sanford case did not exclude double taxation excepting only as to gifts made in contemplation of death.

(b) We remarked in Herzog v. Commissioner, 2 Cir., 116 F.2d 591, 595, 596:

"It may be added that the Revenue Act provides for the credit of gift taxes on estate taxes subsequently levied on property included in the gift and that the possibility of overlapping does not necessarily preclude the imposition of a gift tax here. Tyler v. United States, 281 U.S. 497, 50 S.Ct. 356, 74 L.Ed. 991, 69 A.L.R. 758; Helvering v. Bowers, 303 U. S. 618, 58 S.Ct. 525, 82 L.Ed. 1083; Lilly v. Smith, 7 Cir., 96 F.2d 341; Commissioner v. Hart, 3 Cir., 106 F.2d 269; Helvering v. Bullard, 303 U.S. 297, 58 S.Ct. 565, 82 L.Ed. 852. In transfers to tenants by the entirety and in trust settlements made after March 3, 1931, under which income is reserved to the settlor for. life, estate taxes are imposed which to some extent overlap gift taxes. We do not understand that Estate of Sanford v. Commissioner, supra, inferentially overruled the decisions in the cases last mentioned, or that it went any farther than to hold that because a transfer in trust which was incomplete would ultimately be subject to estate tax it was not subject to gift tax." We adhere to that view of the Sanford case. We conclude that the taxability under the estate tax of the contingent remainders in the instant case does not exempt them from the gift tax.

For the foregoing reasons, we think that Hughes v. Commissioner, 9 Cir., 104 F.2d 144, was correct and that its conclusion is unaffected by the subsequent decisions in the Sanford and Hallock cases. We accept Mr. Paul's summary:[25] "The Ninth Circuit in the Hughes case looked upon gift tax liability as essentially a matter of comparative life expectancies, which

---

[22] 308 U.S. pages 43–47, 60 S.Ct. 51, 84 L.Ed. 20.

[23] The Sanford case, the Court said, presented "the single question" of whether the gift became complete when the donor relinquished his power to change the beneficiaries, 308 U.S. pages 39, 40, 60 S.Ct. page 54, 84 L.Ed. 20. We are warned by Chief Justice Marshall: "It is a maxim, not to be disregarded, that general expressions, in every opinion, are to be taken in connection with the case in which those expressions are used. If they go beyond the case, they may be respected, but ought not to control the judgment in a subsequent suit, when the very point is presented for decision. The reason of this maxim is obvious. The question actually before the court is investigated with care, and considered in

its full extent. Other principles which may serve to illustrate it, are considered in their relation to the case decided, but their possible bearing on all other cases is seldom completely investigated." Cohens v. Virginia, 6 Wheat. 264, 399, 5 L.Ed. 257; cf. Humphrey's Executor v. United States, 295 U.S. 602, 626, 627, 55 S.Ct. 869, 79 L.Ed. 1611; Myers v. United States, 272 U.S. 52, 142, 143, 47 S.Ct. 21, 71 L.Ed. 160; O'Donoghue v. United States, 289 U.S. 516, 550, 53 S. Ct. 740, 77 L.Ed. 1356; Weyerhaeuser v. Hoyt, 219 U.S. 380, 394, 31 S.Ct. 300, 55 L.Ed. 258; Taylor v. Voss, 271 U.S. 176, 185, 46 S.Ct. 461, 70 L.Ed. 889.

[24] See Paul, Federal Estate and Gift Taxation, supra, 1172–1173.

[25] Id., 1187.

are, of course, unaffected by the contingent or vested nature of the trust interest. As Mr. Justice Cardozo observed in another context, 'The label counts for little.' [26] If the description in terms of property law is irrelevant, the change wrought by Helvering v. Hallock should likewise be disregarded as unrelated to gift tax liability. The Sanford case may be disposed of as involving a trust reserving to the grantor the power to alter the flow of benefits. * * *"

The decision of the Board of Tax Appeals is reversed.

FRANK, Circuit Judge, dissenting.

[26] R. H. Stearns Co. v. United States, 291 U.S. 54, 61, 54 S.Ct. 325, 78 L.Ed. 647; cf. State of Wisconsin v. J. C. Penney Co., 311 U.S. 435, 443, 61 S.Ct. 246, 85 L.Ed. 267, 130 A.L.R. 1229.