**TEXAS CO. v. Z. & M. INDEPENDENT OIL CO., Inc.**

No. 215, Docket 20107.

Circuit Court of Appeals, Second Circuit.

July 9, 1946.

Milbank, Tweed, Hope, Hadley & Mc-Cloy, of New York City, and Edward C. Rowe, of Hamilton, N. Y. (John A. Kelly, of New York City, Edward C. Rowe, of Hamilton, N. Y., and L. Reyner Samet and Austen B. McGregor, both of New York City, of counsel), for appellant.

Brown, Hubbard, Felt & Fuller, of Utica, N. Y. (Gay H. Brown, of Utica, N. Y., S. A. L. Morgan, of Amarillo, Tex., Alan H. Colcord, of New York City, and Kenneth W. Fuller, of Utica, N. Y., of counsel), for appellee.

Before L. HAND, SWAN, and PHIL-LIPS, Circuit Judges.

SWAN, Circuit Judge.

This litigation concerns an option to purchase granted under date of September 20, 1929, by Z. & M. Independent Oil Company, Inc. (hereafter called Z & M), to The Texas Company (hereafter called Texas). Texas gave notice on August 29, 1944 that it elected to exercise the option and

thereafter brought the present action for specific performance of the resulting contract. Federal jurisdiction rests on diverse citizenship, Texas being a Delaware corporation and Z & M a New York corporation. The case was tried to the court without a jury and judgment was given for the plaintiff, with a reference to a special master to find the present fair value of the properties covered by the option, that is, the price to be paid for them.

The defendant's appeal raises several questions of law, Z & M contending (1) that the option expired July 13, 1942; (2) that in any event the notice Texas gave on August 29, 1944 was not a proper exercise of the option; (3) that Z & M's stockholders never consented to a sale of its property as required by section 20 of the New York Stock Corporation Law, Consol.Laws, c. 59, and are not estopped from so asserting; (4) that specific performance cannot be had because of lack of mutuality of remedy and because the purchase price was to be fixed by arbitration; (5) that enforcement of the option is harsh and inequitable; and (6) that the court erred in dismissing Z & M's counterclaim.

The district court filed an opinion and made detailed findings of fact. Texas is an old and widely known producer of petroleum products. Z & M is a distributor of petroleum products to dealers and consumers within a large section of central New York. Since its incorporation in 1917 the major portion of the petroleum products distributed by it has been purchased from Texas and sold under Texas trademarks and trade names. Under date of September 20, 1929 the parties entered into two contracts referred to respectively as a "sales contract" and an "option agreement." The sales contract provided in substance that Texas was to supply Z & M's requirements of petroleum products for a period of three years and thereafter until termination of the contract which either party could effect by the giving of 120 days' notice before the end of any yearly period. The price of the products delivered to Z & M was to be based on the seller's "tank wagon market price" in effect at the time of shipment, less certain deductions or discounts favorable to Z & M. The option agreement may be summarized as follows: The consideration is stated to be the signing by Texas of the sales contract and the mutual promises of the parties in the option agreement. By section (1) of the "First" article "Z & M grants to Texas the right and option to purchase the below described property during the time, on the terms and under the conditions hereinafter stated." Section (2) describes the property covered by the option; it includes all the real estate (and leaseholds) with improvements thereon, used by Z & M in connection with its business, and all the facilities and equipment (designated "personalty") owned by Z & M and used by it or its customers in the storage, handling or selling of petroleum products. Section (3) states that the option may be exercised at any time during the term of the sales contract "(or any renewal or other agreement in lieu thereof) after the expiration of the first three years of said term * * *" The option agreement also provided that in the event of the death of Frank Zuber, the president of Z & M, during the first three years of the sales contract, Texas was obligated to exercise the option. Article "Second" provides that the consideration to be paid by Texas shall be such price as the American Appraisal Company shall fix as the fair value thereof or, if the price so fixed be unsatisfactory to either of the parties, such price as may be fixed by negotiation or arbitration. The real estate was to be appraised "on the basis of conservative values as of the time of appraisal or arbitration respectively" and the personalty "on the basis of cost less depreciation and replacement values,"[1] but the value of Z & M's going business, good will, trade-marks or trade names was not to be considered, "it being understood by both parties hereto that suitable and proper compensation for the value of such items has been given by Texas to Z & M in the" sales contract. If

---

[1] On February 17, 1930 the parties attempted to agree to change the standard of appraisal with respect to personalty. The district court held this agreement invalid. Since its holding on this point has not been questioned on the appeal, we do not consider it.

Texas appointed an arbitrator, Z & M was to appoint another and the two so selected would select a third arbitrator; but if no arbitrator was appointed by Z & M, the one appointed by Texas should be the sole arbitrator. "The prices fixed by arbitration shall be final and binding on both parties, and the option shall be deemed exercised by Texas at this final price, promptly upon notification to Texas by arbitrators of the fixing thereof." If the option were exercised, Z & M and Mr. Zuber personally were bound not to engage in similar business for ten years within a specified radius of distributing points

Execution of the sales contract and the option agreement was authorized by resolutions of the directors of Z & M on September 18, 1929; and on September 23, 1929 identical resolutions were unanimously adopted at a special meeting of Z & M's stockholders, all of whom were present in person or by proxy.[2] After the making of the sales contract of September 20, 1929, frequent renewals or modifications thereof were effected by the exchange of letters between the parties which changed the seller's prices, established new rates of discount to Z & M, added new products and named new points of shipment and distribution. On December 27, 1941, Z & M notified Texas that it elected to terminate as of June 30, 1942 the sales contract of September 20, 1929, and all renewals or modifications thereof, as well as the option agreement But as a result of negotiations this attempted cancellation was withdrawn and the sales contract and option agreement were extended to June 30, 1944 and from year to year thereafter, subject to termination by either party by 180 days prior notice, with an express stipulation that Texas should not have the privilege of exercising the option before June 30, 1944, or until the expiration of six months after the cessation of hostilities between the United States and Germany and Japan, but might exercise it "at any time after June 30, 1944, according to the terms and conditions of said option, upon giving 180 days written notice to" Z & M.

In April 1944 all of the stock of Z & M was purchased by the Gulf Oil Corporation. Texas did not learn of this transaction until August 28, 1944. The following day Texas notified Z & M by letter that it exercised the option of September 20, 1929 and demanded a statement of the property covered and of the value of each item thereof. Z & M replied denying the existence of any option agreement. The Gulf Oil Corporation, which knew of the sales contract and option agreement before purchasing the Z & M stock, likewise informed Texas that it repudiated the option agreement and did not consent to such a sale. Thereupon Texas brought the action now before us.

Several of the appellant's contentions are based on section 20 of the Stock Corporation Law of New York. This statute permits a corporation to sell and convey all its property with the consent of two-thirds of its stockholders obtained at a meeting called pursuant to section 45. The appellant argues that the consent of stockholders to the granting of an option is not a consent to a sale or conveyance, and consequently the Z & M stockholders' resolution of September 23, 1929 was "an unnecessary and meaningless act." If this were sound, it would mean that a corporation could never grant a valid option to purchase all its property. No authority is cited which supports this extraordinary interpretation of section 20. An option is an irrevocable offer to sell which becomes a binding contract of sale on acceptance by the optionee. If two-thirds of the stockholders can authorize the officers to enter into a contract of sale, we can conceive of no possible reason why they cannot authorize the making of an irrevocable offer, as well as a revocable offer, of such a contract. In either case the objecting minority may have its stock valued and retired un-

---

[2] Mr. Zuber owned more than two-thirds of Z & M's stock from January 1, 1929 to December 21, 1941 when he made a gift of 800 shares each to his wife and daughter. At all material times 97% of the stock was owned by members of the Zuber family and Mr. Zuber exercised full control over Z & M's affairs with the acquiescence of each of its shareholders.

der section 21. See Matter of Goelet, 289 N.Y. 735, 46 N.E.2d 349; Matter of Thomas, 259 App.Div. 736, 18 N.Y.S.2d 314.

The appellant also contends that the resolution of September 23, 1929 did not authorize the option agreement actually made; and certainly did not authorize the modifications of July 6, 1942. Neither objection is tenable. The statute does not require any particular form of consent; hence the stockholders' resolution need not set out the agreement in extenso. See Greenpoint Sugar Co. v. Whitin, 69 N.Y. 328, 334; Lincoln Sterling Corp. v. State Theatre Dunkirk, 256 App.Div. 1035, 10 N.Y.S.2d 813. It was sufficient that the resolution made plain the stockholders' intention to consent and that the officers acted within the scope of the authority conferred upon them. As to the modifications of July 6, 1942, they put no added burdens on Z & M; they merely required Texas to forbear from exercising the option until June 30, 1944 and lengthened the notice to be given of election to exercise it. Conceivably any extension of the option might be thought a new irrevocable offer requiring a new consent by the stockholders, but we think not in view of the provision that the original option might be exercised during the term of the sales contract of September 20, 1929 "or any renewal or other agreement in lieu thereof." But regardless of that, by the law of New York, if the contract is not positively forbidden for reasons of public policy independent of protection of shareholders (Berkey v. Third Avenue R. Co., 244 N.Y. 84, 91, 92, 155 N. E. 58, 50 A.L.R. 599), shareholders may not complain of any contract of which they have individually approved regardless of the absence of statutory formalities. Kent v. Quicksilver Mining Co., 78 N.Y. 159, 185–187; Sheldon H. B. Co. v. Eickemeyer H. B. M. Co., 90 N.Y. 607; Giles D. M. Co. v. Klauder-Weldon D. M. Co., 233 N.Y. 470, 476, 135 N.E. 854. One of the main reasons for the enactment of section 20 was to protect minority stockholders, Matter of Timmis, 200 N.Y. 177, 93 N.E. 522; Matter of Drosnes, 187 App.Div. 425, 175 N.E. 628; the section was not intended to enable corporations to avoid their contractual obligations. If two-thirds of the stockholders individually consented it was as effective as if they had voted at a formal meeting. In the case at bar more than the necessary number have consented to all that Zuber did on behalf of Z & M; it would be monstrous to allow their successors to repudiate their consent by invoking a statute intended merely for their protection.

The foregoing discussion relates to the appellant's points (1) (3) and (5) as listed at the outset of our opinion. The appellant urges also, point (2), that the trial court erred in ruling that the option was exercised by Texas by its letter of August 29, 1944. That letter stated:

"Pursuant to agreement between us dated July 6, 1942, and that certain option agreement between us dated September 20, 1929, you are hereby notified that The Texas Company exercises the option contained in said agreements to purchase all of the land, buildings, structures, facilities, leaseholds and other properties referred to in the option agreement of September 20, 1929, on the terms and conditions therein referred to."

The agreement of July 6, 1942 provided that the option could be exercised "upon giving 180 days' written notice" to Z & M. Certainly no further notice than the letter was required. See Castle Creek Water Co. v. City of Aspen, 8 Cir., 146 F. 8, 10, 8 Ann. Cas. 660. The 180 days clause meant only that Z & M could have such period of time after exercise of the option before being required to perform its obligations under the resulting contract. When Z & M repudiated its obligations by its letter of September 20, 1944, Texas was entitled to bring suit as it did on October 30, 1944. By the time of the trial more than 180 days had elapsed after exercise of the option.

The appellant argues, point (4), that specific performance cannot be had because of lack of mutuality of obligation and remedy. It relies on the rule that a contract of sale which provides that the price be determined by arbitrators cannot be specifically enforced. Such has indeed been the general rule since Milnes v. Gery, 14 Ves. 400; see Pomeroy, Specific Performance, 3d Ed., 383; but there is a well recognized exception that when the stipu-

lation for appraisal is not a condition nor the essence of an agreement, but only subsidiary or auxiliary to its main purpose and scope, and when the parties may not be placed or left in statu quo by a refusal to enforce the contract, a chancellor may himself determine the purchase price or leave its determination to a master, as did the court below. Castle Creek Water Co. v. Aspen, 8 Cir., 146 F. 8, 8 Ann.Cas. 660; see also Joy v. St. Louis, 138 U.S. 1, 43, 11 S.Ct. 243, 34 L.Ed. 843; State Reserve Bank v. Swift & Co., 8 Cir., 32 F.2d 590, 592; Williams v. Cow Gulch Oil Co., 8 Cir., 270 F. 9, 12. The tendency today is to construe appraisal clauses as matters of form and as only incidental to the main agreement; Pomeroy, Specific Performance, 3d Ed., 387–389 and cases there cited; 5 Williston, Contracts, 4th Ed., 3967, 3968. We think that the contract under consideration falls within the exception. The main object of the parties was to regulate their business dealing for a long and indeterminate period. As it was uncertain if and when the option would be exercised, it was not reasonable to fix a purchase price at the time of the original agreement. The price was to be left flexible, but specific criteria for its determination were set out.[3] These criteria were to be used by the appraisal company, or alternatively under certain conditions by arbitrators. Therefore it would be unreasonable to consider the stipulation for appraisal as the essence of the contract, and there is no doubt that Texas has performed a most substantial part of the agreements, considered as a whole, by selling its products to Z & M for fifteen years with the allowance of favorable margins. Simmons Co. v. Crew, 4 Cir., 84 F.2d 82, relied on by Z & M, was explicitly decided on the ground that it did not fall within the exception, and cites with approval Castle Creek Water Co. v. Aspen,

supra. There the option was for the purchase of the common stock of a bank; it was not part of another contract and the plaintiff had not yet performed a substantial part of the contract; hence he could be said to have a satisfactory remedy at law. That case is distinguishable.

Other contentions raised by the appellant do not merit discussion, and under the view we take of the case at bar, there is no need to consider the defendant's counterclaim.

Affirmed.

---

[3] "(2) The appraisers in making the appraisal and the arbitrators in fixing the price, if arbitration be resorted to, shall appraise (a) real estate on the basis of conservative values as of the time of appraisal or arbitration respectively, and (b) personalty on the basis of cost less depreciation and replacement values. Neither the appraisers nor the arbitrators shall consider or take into account in making the appraisal or fixing the price, the value of Z. & M.'s going business, good will, trademarks, or trade names, it being understood by both parties hereto that suitable and proper compensation for the value of such items has been given by Texas to Z. & M. in the agreement attached hereto as Exhibit A."