ROSLYN MANDEL, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Mandel v. Commissioner
Docket No. 5293-69.
United States Tax Court
T.C. Memo 1973-156; 1973 Tax Ct. Memo LEXIS 127; 32 T.C.M. (CCH) 771; T.C.M. (RIA) 73156; July 23, 1973, Filed *127 David W. Bernstein, for the petitioner. Michael K. Phalin, for the respondent. FAY
MEMORANDUM FINDINGS OF FACT AND OPINION FAY, Judge: Respondent determined deficiencies in petitioner's income taxes for the taxable years 1965 and 1966 in the amounts of $3,318.85 and $14,916.42, respectively. Petitioner filed an amended petition on July 19, 1972, in which she claimed a refund for 1966 in the amount of $175.06. The parties have agreed that only $42.21 of the claimed $74.43 depreciation deduction for 1966 for the cost of abstracts is allowable. Petitioner has conceded 2 (1) that the deductions for legal expenses claimed in 1965 and 1966 in the amounts of $1,361.31 and $452.53, respectively, were properly disallowed; (2) that $300 of the $600 deduction claimed in 1965 for leasing commissions was properly disallowed; (3) that $474.02 of the $522.55 deduction claimed in 1965 for other expenses was properly disallowed; and (4) that $182.75 of the $2,161 deduction claimed in 1966 for maintenance was properly disallowed. Respondent concedes that the $28,229.60 capital gain determined in the notice of deficiency for 1966 should be eliminated. The only issues remaining *128 for disposition pertain to (1) the fair market value as of June 30, 1965, of real estate located at 6900-6912 Fifth Avenue, Brooklyn, New York (Block 5873, Lot 44-46) (hereinafter referred to as the Fifth Avenue property); (2) the determination of petitioner's basis as of June 30, 1965, in the buildings located on the Fifth Avenue property for depreciation computation purposes; and (3) the determination of petitioner's basis as of June 30, 1965, in the building located on the real estate located at 491 Ovington Avenue, Brooklyn, New York (Block 5873, Lot 63) (hereinafter referred to as the Ovington Avenue property) for depreciation computation purposes. 3 FINDINGS OF FACT Some of the facts are stipulated. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference. In October 1969, the time of the filing of the petition herein, petitioner's legal residence was in Athens, Greece. Petitioner filed individual Federal income tax returns for 1965 and 1966 with the district director of internal revenue, New York, New York. Emes Equities, Inc. ("Emes") was a New York corporation organized in 1937 and was engaged in the ownership and *129 operation of real estate. The capital stock of Emes was wholly owned by petitioner's father, Adolph Mandel ("Adolph"). Emes owned the Fifth Avenue property. This property consisted of three commercial buildings, two 3-story and one 2-story, erected prior to 1900, with a total building area of 22,150 square feet and a total land area of 9,050 square feet. In addition, each of the three buildings has a basement. The total combined basement area for the three buildings is 9,050 square feet. Emes also owned the Ovington Avenue property. This property consisted of a 2-story frame house on an irregular plot of 4,375 square feet. 4 On February 3, 1960, petitioner received 50 percent of the capital stock of Emes as a gift from Adolph. The other 50 percent of the capital stock was given to petitioner's brother, I. Richard Mandel. Adolph died on July 12, 1961. For estate tax purposes the capital stock of Emes was included in the gross estate of Adolph. In determining the value of the capital stock of Emes, a fair market value of $200,000 was agreed to for the Fifth Avenue property and a fair market value of $15,000 for the Ovington Avenue property. Petitioner purchased *130 her brother's 50 percent of the capital stock of Emes on June 2, 1964. On June 30, 1965, Emes was liquidated, and both the Fifth Avenue property and the Ovington Avenue property were distributed to petitioner, d/b/a Bucks Realty Co. Petitioner, d/b/a Bucks Realty Co., recorded the liquidation of Emes on her books and records for July 1, 1965. The book value of the Fifth Avenue property as of July 1, 1965, was listed as $200,000. In computing her depreciation deduction for the three commercial buildings at the Fifth Avenue property for 1965 and 1966, petitioner, d/b/a Bucks Realty Co., used the same allocation ratio for land and buildings which had been used 5 by Emes upon its purchase of the parcel in 1937 which resulted in an allocation of $81,000 to the land and $119,000 to the buildings. In computing her depreciation deduction for the frame house at the Ovington Avenue property for 1965 and 1966 petitioner, d/b/a Bucks Realty Co., used the same allocation ratio for land and building which had been used by Emes upon its purchase of the parcel in 1943 which resulted in an allocation of $5,000 to the land and $10,000 to the building. The net annual rental income *131 from the three commercial buildings at the Fifth Avenue property for 1966 was $18,949.26, computed as follows: Gross Rent
$39,636.42
Operating Expenses:
Taxes - Realty
$11,636.71
Water & sewer
41.25
Supplies
79.25
Insurance
2,718.62
Management Commission
1,960.78
Fuel
2,053.75
Electricity
192.90
Repairs
1,032.51
Permits
50.00
Exterminator
273.00
Legal
12.00
Leasing Commission
600.00
Telephone
36.38
20,687.16
Net Rental Income
$18,949.26 6 The three commercial buildings at the Fifth Avenue property had a remaining useful life as of June 30, 1965, of 25 years. The New York City assessed valuation of the Fifth Avenue property for the years here in question was $232,000, with $124,000 allocated to the land and $108,000 allocated to the buildings. The New York City assessed valuation of the Ovington Avenue property for the years in question was $9,000, with $4,700 allocated to the land and $4,300 allocated to the building. The following comparable sales have taken place in the locale of the Fifth Avenue property: Date of Sale
Address
Sales Price NYC Assessment at Time of Sale June, 1965
7406 5th Avenue (Block 5930, Lot39)
$50,000
Land:
$18,500
Building:
15,500
Total:
$34,000 August, 1965
6915 5th Avenue (Block 5874, Lot 5)
$94,000
Land:
$40,000
Building:
30,000
Total:
$70,000
December, 1965
6724 5th Avenue (Block 5873, Lot 53)
$38,000
Land:
$18,000
Building:
11,000
Total:
$29,000
September, 1968
6717 5th Avenue(Block 5856, Lot 16)
$33,000
Land:
$6,300
Building:
14,700
Total
$21,000
September, 1971
6824 5th Avenue (Block 5864, Lot 52)
$65,000
Land:
$33,000
Building:
19,000
Total:
$52,000
*132 7 The total land area of the real property at 7406 Fifth Avenue (Block 5930, Lot 39) is 2,289 square feet. The total land area of the real property at 6915 Fifth Avenue (Block 5874, Lot 5), is 4,248 square feet. The total land area of the real property at 6724 Fifth Avenue (Block 5873, Lot 53) is 1,580 square feet. Respondent in his notice of deficiency disallowed $470.00 and $1,014.43 of the depreciation deductions claimed by petitioner for the taxable years 1965 and 1966, respectively, and increased petitioner's taxable income for these taxable years to reflect such disallowances. ULTIMATE FINDINGS OF FACT The fair market value of the Fifth Avenue property as of June 30, 1965, was $190,000. Petitioner's basis as of June 30, 1965, in the buildings located on the Fifth Avenue property for depreciation purposes was $110,200. Petitioner's basis as of June 30, 1965, in the building located on the Ovington Avenue property for depreciation purposes was $8,700. OPINION The issues for determination in the instant case require this Court to wade once more into the murky waters 8 of valuation - i.e., what was the fair market value as of June 30, 1965, of *133 the Fifth Avenue property, and what was petitioner's basis for depreciation purposes as of June 30, 1965, in the buildings located on the respective Fifth Avenue and Ovington Avenue properties? With respect to the Fifth Avenue property, respondent contended that the fair market value of this property as of June 30, 1965, was $221,000, and that petitioner's basis for depreciation purposes as of June 30, 1965, in the buildings located on this property was $98,000. Respondent computed these amounts after consideration of such factors as sales of comparable properties in the same geographical locale as the Fifth Avenue property, the New York City real estate assessment ratio, the book value of the Fifth Avenue property, the value accorded to the Fifth Avenue property for estate tax purposes following the death of petitioner's father, and the valuation computations yielded by the land residual and reproduction cost methods. Petitioner contends, on the other hand, that the fair market value of the Fifth Avenue property as of June 30, 1965, was $155,000 and that petitioner's basis for depreciation purposes as of June 30, 1965, in the buildings located on this property was $121,000. *134 Petitioner supported these computations by reliance on the reproduction cost and land residual valuation methods. 9 An analysis of the respective positions in the instant case reveals that the parties have fallen prey to the same problem which invariably plagues valuation cases - i.e., the parties' intransigent conviction in the absolute precision of their respective mathematical computations has precluded any meaningful effort to negotiate successfully a reasonable compromise value. In Morris M. Messing, 48 T.C. 502, 512 (1967), the Court observed: Too often in valuation disputes the parties have convinced themselves of the unalterable correctness of their positions and have consequently failed successfully to conclude settlement negotiations - a process clearly more conducive to the proper disposition of disputes such as this. The result is an overzealous effort, during the course of the ensuing litigation, to infuse a talismanic precision into an issue which should frankly be recognized as inherently imprecise and capable of resolution only by a Solomon-like pronouncement. See Commissioner v. Marshall, 125 F.2d 943, 946 (C.A. 2, 1942); Bosland, *135 "Tax Valuation by Compromise," 19 Tax L. Rev. 77 (1963). We have carefully examined the facts and circumstances as presented by the entire record in the instant case. Although each party's expert witness was competent, we have concluded that the approach of each of these witnesses was imbued with certain weaknesses. For example, petitioner's expert witness arbitrarily concluded that petitioner's Fifth Avenue property should be treated as one composite unit for valuation purposes. He reasoned that since one of the three contiguous lots comprising the Fifth Avenue property contained 10 a two-story building for which comparable sales were not available, existing comparable sales should be disregarded for the three-story buildings which were located on the two remaining Fifth Avenue property lots. We are not convinced by this argument. We believe that the rationale of consistency would require the usage of the exact same valuation method for each of the three lots comprising the Fifth Avenue property if and only if a precise total value could conceivably be obtained. However, as we have commented previously, valuation is at the very best a highly imprecise *136 art. Therefore, any method which contributes to the resolution of the question of total value of the Fifth Avenue property must be considered. Accordingly, we have concluded that the comparable sales available for the three-story building lots should be considered in determining the total value of the Fifth Avenue property. Similarly, petitioner has arbitrarily ignored the New York City real estate assessment ratio. Although this ratio is not controlling as to the determination of the fair market value of a specific parcel of real estate, it is a factor to be considered in allocating the aggregate fair market value between respective land and building components. See e.g., 2554-58 Creston Corp., 40 T.C. 932, 940 at fn. 5 (1963). Accordingly, we have concluded that the New York City real estate assessment ratio is a relevant factor to be considered 11 in allocating the total fair market value of the Fifth Avenue property between the component buildings and land. On the other hand, respondent's expert witness arbitrarily ignored the cost of the basements in his utilization of the reproduction cost method of valuation. A basement is an integral part of a building, and, *137 thus, we have concluded that the basements should have been considered in determining the replacement cost of the buildings. After closely analyzing the entire record in the instant case, we have concluded that the fair market value of the Fifth Avenue property as of June 30, 1965, was $190,000. We have further concluded that petitioner's basis in the buildings located on the Fifth Avenue property for depreciation purposes as of June 30, 1965, was $110,200. With respect to the Ovington Avenue property, respondent contends that petitioner's basis in the building located on this property for depreciation purposes as of June 30, 1965, was $7,500. Petitioner, on the other hand, contends that her depreciable basis was $10,000. We have concluded that petitioner's depreciable basis in this building as of June 30, 1965, was $8,700. Decision will be entered under Rule 50.